UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELAINA TURNER and <br> ULYSSES GREEN, <br>       Plaintiffs, <br>   vs. <br><br> CITY OF CHICAGO, ILLINOIS, and <br> CHICAGO POLICE OFFICERS <br> Patrick KELLY, Star No. 19397 , <br> Jeffrey WEBER, Star No. 13854 <br> James KUBIK, Star No. 1397 <br><br>       Defendants. | Case No. 15 CV 6741 <br><br> HON. SHARON J. COLEMAN <br><br><br><br><br> **JURY TRIAL DEMANDED** |

### AMENDED COMPLAINT AT LAW

     Now comes Plaintiffs, ELAINA TURNER and ULYSSES GREEN, by and through his attorneys, Law Office of Jeffrey B. Granich, and make the following complaint against Defendant CITY OF CHICAGO, ILLINOIS, ("Defendant City"), Defendant CHICAGO POLICE OFFICERS Patrick KELLY, Star No. 19397 and Jeffrey WEBER, Star No. 13854 ("Defendant Officers") as follows:

### JURISDICTION and VENUE

1.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. At all times relevant hereto, Plaintiff Elaina Turner was a pregnant 30 year-old, African-American female resident of Chicago, Illinois.

5. At all times relevant hereto, Plaintiff Ulysses Green was a 30 year-old African-American male resident of Chicago, Illinois.

6. At all times relevant hereto, Defendant Officers were Police Officers for the City of Chicago and were acting under the color of the law and within the scope of their employment.

7. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

## FACTUAL ALLEGATIONS

8. On or about August 2, 2013, Plaintiffs TURNER and GREEN were lawfully present outside of their home at or around 718 W. 54th Place, Chicago, Illinois.

9. At this time, one or more of the Defendant Officers arrived outside of Plaintiffs' home and began initiating a tow of Plaintiff GREEN's vehicle without just cause or justification.

10. At this time, Plaintiffs requested to remove personal items from the vehicle before it was unlawfully towed.

11. At this time, Officer KELLY, without just cause or reasonable justification, proceeded to taser Plaintiff TURNER numerous times causing Plaintiff TURNER to suffer severe pain and injury, including but not limited to suffering a miscarriage.

12. Following the unreasonable tasing of Plaintiff TURNER, the Defendant Officers proceeded to unconstitutionally search and arrest Plaintiff TURNER on the false criminal charge of Resisting/Obstructing a police officer under Illinois criminal statute, 729 ILCS 5.0/31-1-A.

13. Following Plaintiff TURNER's unlawful arrest, she was transferred under police custody and guard for medical treatment at St. Bernard's Hospital.

14. After being treated, she was transferred to a Chicago Police Station for processing on these false charges.

2

15. At sometime after August 2, 2013, one or more of the Defendant Officers knowingly initiated the false arrest of Plaintiff GREEN by falsifying official police documents and reports regarding the August 2, 2013 incident, including false claims about Plaintiffs' actions on that date, and making false claims to a Chicago Police Detective falsely alleging that Plaintiff GREEN committed an assault on Officer KELLY on August 2, 2013.

16. On August 14, 2013, based on the knowingly false information provided by the Defendant Officers, Plaintiff GREEN was falsely arrested and charged under Illinois Criminal Statute, 720 ILCS 5.0/12-2-B-4.

17. At all times relevant hereto, Plaintiff TURNER and GREEN were acting fully in conformity with all laws, statutes, and ordinances of the United States, the State of Illinois, and the City of Chicago.

18. At all times relevant hereto, Defendant Officers did not have reasonable suspicion, probable cause, or any lawful justification to use force, search, or arrest Plaintiff TURNER and Plaintiff GREEN.

19. On August 4, 2013, one day after Plaintiff TURNER's release from police custody, Plaintiff TURNER and Plaintiff GREEN filed a complaint with the City of Chicago's Independent Police Review Authority ("IPRA") regarding the August 2, 2013, incident.

20. On August 4, 2013, Plaintiff TURNER and Plaintiff GREEN were informed by IPRA that their complaint would not be investigated without Plaintiff TURNER and Plaintiff GREEN making an audio recorded statement, under oath, regarding the incident.

21. On August 4, 2013, Plaintiff TURNER, under oath, made an audio-recorded statement to IPRA Investigator Ramona Hendricks, IPRA Star number 140, regarding the incident of August 2, 2013.

22. On August 4, 2013, Plaintiff GREEN, under oath, made an audio-recorded statement to IPRA Investigator Ramona Hendricks, IPRA Star No. 140, regarding the incident of August 2, 2013.

23. On August 4, 2013, IPRA filed LOG # 1063990 against Defendant Officer KELLY and WEBER regarding the incident of August 2, 2013.

24. As of the filing of this Complaint, the CITY OF CHICAGO, through its agent IPRA, as a matter of policy, practice, and custom have not investigated the claims made by the Plaintiffs against the Defendant Officers regarding the August 2, 2014, incident and have deliberately

3

attempted to withhold information to prevent Plaintiffs from learning of the extensive misconduct history of the Defendant Officers.

25. On December 9, 2013, Plaintiff TURNER and GREEN, in seeking information to defend against the false criminal charges brought against them by one or more of the Defendant Officers, sent a subpoena *duces tecum* upon IPRA requesting any and all information IPRA obtained as a result of the Plaintiffs complaint. The December 9, 2013, subpoena was not complied with by IPRA on the return date of December 23, 2013.

26. On March 19, 2015, after IPRA produced only a portion of the IPRA file for an in camera inspection before a Circuit Court of Cook County Judge, Plaintiffs sent IPRA a second subpoena, pursuant to Illinois Supreme Court Rule 412(g), to again produce the entire IPRA file and documents created and/or obtained in the investigation of Plaintiffs complaint for the purposes of preparing Plaintiffs defense to the false criminal charges initiated by one or more of the Defendant Officers.

27. On April 2, 2015, IPRA produce, pursuant to Plaintiffs' subpoena, what IPRA claimed to be the complete IPRA file, along with all documents created and/or obtained by IPRA regarding the investigation of Plaintiffs complaint. The documents returned showed that IPRA did not contact or attempt to contact any of the Defendant Officers for which Plaintiffs had specifically accused of misconduct, including numerous unjustified tasing of pregnant Plaintiff TURNER.

28. Despite Plaintiffs' subpoenas, IPRA failed to produce the extensive misconduct record of Officer KELLY and WEBER or failed to obtain the records in an attempt to conceal from the Plaintiffs the extensive violent misconduct history of these Defendant Officers.

29. Since Plaintiffs' initiation of IPRA Complaint LOG # 1064990 on August 4, 2013, IPRA has not obtained the complaint history records of the Defendant Officers.

30. Since Plaintiffs' initiation of IPRA Complaint LOG # 1064990 on August 4, 2013, IPRA has not contacted nor attempted to contact any of the Defendant Officers regarding the August 2, 2013, incident.

31. Since Plaintiffs' initiation of IPRA Complaint LOG # 1064990 on August 4, 2013, IPRA has not requested any Defendant Officers to make a statement regarding the August 2, 2013, incident, as they required Plaintiffs to do.

32. At all relevant times hereto, IPRA is charged with investigating misconduct complaints made against Chicago Police Officers for the CITY OF CHICAGO.

33. At all times relevant hereto, IPRA was aware of the extensive and violent misconduct history of Officer KELLY and Officer WEBER.

34. At all times relevant hereto, IPRA had created and/or had immediate access to the misconduct history of all Defendant Officers.

**DEFENDANT OFFICER KELLY'S HISTORY OF MISCONDUCT**

35. On January 2, 2005, a complaint register # 302879 (hereinafter referred to as a "CR") was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian on January 2, 2005

36. On June 20, 2005, CR # 306380 was filed against KELLY for neglect of duty, unbecoming conduct and/or other misconduct regarding a civilian on June 19, 2005

37. On July 22, 2005, CR # 307352 was filed against KELLY for false arrest and/or other misconduct regarding an arrest of a citizen on July 22, 2005.

38. On August 22, 2005, CR # 307921 filed against KELLY for illegal arrest and/or other misconduct regarding a civilian on August 4, 2005.

39. On September 19, 2005, CR # 308519 was filed against KELLY for a domestic altercation and/or other misconduct while off duty on September 19, 2005.

40. On April 21, 2006, CR # 312461 was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian on April 20, 2006.

41. On May 13, 2006, CR # 312940 was filed against KELLY for misconduct regarding an incident with a civilian on May 13, 2006.

42. On June 12, 2006, CR # 313525 was filed against KELLY for excessive force and/or other misconduct on June 12, 2006

43. On October 8, 2006, CR # 1000316 was filed against KELLY for intimidation and/or other police misconduct regarding his arrest of a citizen on October 8, 2006.

44. On October 17, 2006, CR # 1000794 was filed against KELLY for excessive force and/or other misconduct while issuing a citation to a civilian on October 17, 2006.

45. On July 30, 2007, CR # 1008002 was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian on July 28, 2007.

46. On August 22, 2007, CR # 1008618 was filed against KELLY for excessive force and/or other misconduct regarding his search of a civilian on August 19, 2007.

47. On June 29, 2008, CR # 1017140 was filed against KELLY for excessive force and/or other misconduct regarding an alleged illegal arrest of a civilian on June 3, 2008.

48. On November 17, 2008, CR # 1020013 was filed against KELLY for false arrest and/or other police misconduct regarding his arrest of a citizen on September 5, 2007. (Wilson)

49. On December 30, 2008, CR # 1022769 was filed against KELLY for excessive force and/or other misconduct regarding his interaction and arrest of a civilian on December 30, 2008.

50. On August 1, 2009, CR # 1028782 was filed against KELLY for excessive force and/or other misconduct regarding an incident with a civilian on July 27, 2009.

51. On January 12, 2010, CR# 1033096 was filed against KELLY for official misconduct, failure to secure his weapon, and assault to a superior officer on January 12, 2010.

52. On February 4, 2015, CR # 1073630, was filed against KELLY for excessive force, including use of a taser without justification, and/or other misconduct regarding his arrest of a citizen on October 8, 2014,

53. On April 23, 2015, CL # 1074138, was filed against KELLY for false arrest and/or other police misconduct of a civilian on March 10, 2015.

54. On August 1, 2014, CR # 1069919, was filed against KELLY for excessive force and/or other police misconduct of a civilian on July 11, 2014.

55. On August 19, 2014, CR # 1070321 was filed against KELLY for misconduct regarding an incident with a civilian on July 13, 2014.

56. On June 12, 2006, KELLY was arrested by the Chicago Police Department at 10702 S. Troy Street. Chicago, Illinois for battery.

6

57. On January 12, 2010, KELLY was arrested by the Chicago Police Department, under RD# HS116069, at 10703 S. Troy for assault against a female Chicago Police Sargent.

58. On October 16, 2014, KELLY was suspended by the Chicago Police Department for 60 day as a result his assaulting a Chicago Police Sergeant, making false statements, and not securing his weapon.

59. Further, KELLY has been a named Defendant in the following federal and/or state court civil rights cases that alleged that KELLY committed excessive force, false arrest or other police misconduct against the plaintiff:

   a. *Martinez, et al. v. City of Chicago, et al.*, 09 CV 5938.
   b. *LaPorta v. City of Chicao, et al.*, 14 CV 9665
   c. *Jesus Rios, et al. v. City of Chicago, et al.,* 08 C 4272
   d. *Anthony Wilson v. Officer Kelly, et al.,* 08 CV 4103
   e. *Renteria v. City of Chicago, et al.,* 04 C 2347

## DEFENDANT OFFICER WEBER'S HISTORY OF MISCONDUCT

60. On June 22, 2001, CR # 272377 was filed against WEBER for police misconduct regarding an incident with a citizen on June 20, 2001.

61. On January 30, 2002, CR # 277942 was filed against WEBER for excessive for and/or other misconduct regarding an incident with a civilian on January 26, 2002

62. On January 12, 2004, CR # 295074 was filed against WEBER for excessive force and/or other misconduct regarding his arrest of a citizen on January 12, 2004.

63. On March 24, 2006, CR # 311857 was filed against WEBER for misconduct regarding a failure to respond incident with a citizen on March 22, 2006.

64. On July 22, 2006, CR # 314395, was filed against WEBER for misconduct regarding an incident with a citizen on July 22, 2006.

65. On July 30, 2007, CR # 1008002 was filed against WEBER for excessive force and/or other misconduct regarding his arrest of a civilian on July 28, 2007. (RIOS)

66. On April 27, 2009, CR # 1025865 was filed against WEBER for excessive force and/or other misconduct regarding an interaction with a civilian on April 27, 2009.

7

67. On August 14, 2013, CR # 1064239 was filed against WEBER for a domestic altercation and/or other misconduct on August 13, 2013

68. On August 22, 2007, CR # 1008618 was filed against WEBER for excessive force and/or other misconduct regarding his search of a civilian on August 19, 2007.

69. On October 10, 2009, CR # 1029794 was filed against WEBER for misconduct when responding to a domestic altercation on September 3, 2009.

70. On April 13, 2011, CR # 1044368 was filed against WEBER for threatening a citizen and other misconduct regarding an incident with a citizen on March 27, 2011.

71. On April 3, 2014, CR # 1067665 was filed against WEBER for excessive force and/or other misconduct regarding his arrest of a citizen on January 17, 2012. (Martinez

### Count I - WILLFUL AND WANTON
### Against City of Chicago

72. Plaintiffs re-alleges the preceding paragraphs as if fully replead herein.

73. That on and prior to August 2, 2013, and at all relevant times herein, Defendant CITY OF CHICAGO, exercises control over the Chicago Police Department.

74. That on and prior to August 2, 2013, and at all relevant times herein, the Chicago Police Department had in effect polices and procedures, rule, regulations, and general orders pertaining to the conduct of its police officers.

75. That on and prior to August 2, 2013, and at all relevant times herein, the CITY OF CHICAGO, had in effect policies and procedures, rules, regulations, and general orders pertaining to the conduct of officers, agents, representatives, and/or employees.

76. That on and prior to August 2, 2013, and at all relevant times herein, Officer PATRICK KELLY ("KELLY"), was employed by Defendant, CITY OF CHICAGO, as a police officer with the CITY OF CHICAGO Police Department.

77. That prior to the tasing of Plaintiff TURNER, KELLY had at least 17 CRs filed against him for excessive force, unbecoming conduct, unjustified use

8

of a taser, illegal arrest, domestic altercations, and/or other misconduct while serving as a Chicago Police Officer

78. That prior to the tasing of Plaintiff TURNER, KELLY had been arrested by the Chicago Police Department for assault and/or battery on at least two occasions.

79. Prior to the tasing of Plaintiff TURNER, KELLY had been a co-Defendant with the CITY OF CHICAGO in at least five lawsuits alleging civil rights violations from a civilian.

80. That on and prior to August 2, 2013, KELLY, while utilizing his position as an officer under the color of law, acted dangerously and/or recklessly regarding the use of CITY OF CHICAGO Police Department issued service weapons, putting members of the community in danger.

81. That on August 2, 2013, at or near 718 W. 54th Place, Chicago, Illinois, KELLY discharged his CITY OF CHICAGO issued service weapon taser numerous times striking Plaintiff TURNER repeatedly.

82. That at all times relevant herein, there existed a duty on the part of Defendant, CITY OF CHICAGO, to refrain from willful and wanton conduct with respect to Plaintiff TURNER.

83. That at all times relevant herein, there existed a duty on the part of Defendant, CITY OF CHICAGO, to refrain from conduct that would likely and probably result in great bodily harm to Plaintiff TURNER.

84. That on August 2, 2013 at or near 718 W. 54th Place, Chicago, Illinois, Defendant CITY OF CHICAGO, in disregard of its duty, was then and there guilty of one or more of the following willful and wanton acts or omissions:

   a. With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, allowed its officer, KELLY, to carry his taser on his person, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law and that the allowance of such would cause and could cause injury to an individual such as ELAINA TURNER.

   b. With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, allowed its officer, KELLY, to display his taser on his person, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of

9

      law and that the allowance of such would cause and could cause injury to an individual such as ELAINA TURNER.

c.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, allowed its officer, KELLY, to possess his taser on his person, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law and that the allowance of such would cause and could cause injury to an individual such as ELAINA TURNER.

d.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, allowed its officer, KELLY, to fire his taser on his person, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law and that the allowance of such would cause and could cause injury to an individual such as ELAINA TURNER.

e.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, failed to properly train KELLY, with regards to the use of his taser, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his taser while utilizing his position as an officer under the color of law while on-duty and that such failure would cause and could cause injury to an individual such as ELAINA TURNER.

f.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, failed to supervise KELLY, with regards to the use of his taser, even though Defendant CITY OF CHICAGO, knew or should have known of KELLY's dangerous propensities involving the use of his taser while utilizing his position as an officer under the color of law while on-duty and that such failure would cause and could cause injury to an individual such as ELAINA TURNER.

g.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, partnered KELLY and WEBER to patrol the streets of Chicago, even though Defendant CITY OF CHICAGO knew or should have known KELLY and WEBER's extensive history of civilian and official complaints, extensive history of violence, and KELLY and WEBER's violent propensities.

h.   With utter indifference and conscious disregard, Defendant CITY OF CHICAGO, approved, allowed, and encouraged KELLY and WEBER to use force against citizens while acting in official capacity as police officers against citizen of Chicago, even though Defendant CITY OF

10

        CHICAGO, knew or should have known of KELLY's dangerous propensity and WEBER's dangerous propensity for committing violence against citizens of Chicago. Defendant CITY OF CHICAGO encourages such conduct by allowing Chicago Police Officers, like KELLY and WEBER, to commit such acts of unconstitutional violence without being held accountable.

    i. Was otherwise willful and wanton.

85. That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions on the part of the Defendant, CITY OF CHICAGO, KELLY's taser discharged numerous times and struck ELAINA TURNER about her body.

86. That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions on the part of the Defendant CITY OF CHICAGO, ELAINA TURNER suffered serous injuries and suffered damages of a personal and pecuniary nature, including but nor limited to, pain and suffering.

    WHEREFORE, Plaintiff pray for judgment against the Defendant CITY OF CHICAGO in a fair and just amount sufficient to compensate her for the injuries she suffered, plus, Plaintiff seeks coast and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count II – 42 U.S.C. § 1983 False Arrest

87. Plaintiffs re-alleges the preceding paragraphs as if fully repleaded herein.

88. On August 2, 2013, Plaintiff ELAINA TURNER was seized and arrested without a warrant and without probable cause. These seizures and arrests were in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

89. On August 14, 2013, Plaintiff ULYSESS was seized and arrested without a warrant and without probable cause. These seizures and arrests were in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

90. Defendant Officers unlawfully and maliciously arrested Plaintiff and wrongfully detained and searched then without any legal right to do so, in their official capacity as law enforcement officers, under color of state law, and acting within the scope of their employment.

91. The acts committed by Defendant Officers were done maliciously,

11

    willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiffs.

  WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair and just amount sufficient to compensate him for the injuries he suffered and continues to suffer, plus, Plaintiff seeks a substantial sum in punitive damages against Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count III – 42 U.S.C. § 1983 – Excessive Force

92. Plaintiffs re-allege the preceding paragraphs as if fully repleaded herein.

93. On August 2, 2013, Defendant Officers subjected Plaintiff TURNER to excessive force.

94. The misconduct as described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, maliciously, willfully and with reckless indifference to Plaintiff's constitutional rights.

95. As a direct and proximate result of the unreasonable and excessive use of force, Plaintiff suffered severe injuries, including but not limited to sever pain, suffering and emotional distress.

  WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair and just amount sufficient to compensate them for the injuries they suffered and continue to suffer, plus, Plaintiff seeks a substantial sum in punitive damages against Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count IV – 42 U.S.C. § 1983 – Failure to Intervene

96. Plaintiffs re-allege the preceding paragraphs as if fully repleaded herein.

97. During the constitutional violations as described above, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

98. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to Plaintiffs' constitutional rights.

99. As a result of this failure to intervene to prevent the violation of Plaintiffs'

constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Officers had a reasonable opportunity to prevent this harm, but failed to do so.

WHEREFORE, Plaintiffs pray for judgment against Defendant Officers in a fair and just amount sufficient to compensate them for the injuries they suffered and continue to suffer, plus, Plaintiffs seeks a substantial sum in punitive damages against Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count V – 42 U.S.C. § 1983 Conspiracy

100. Plaintiffs re-allege the preceding paragraphs as if fully repleaded herein.

101. Defendant Officers and Defendant City reached an understanding, engaged in a sequence of events or course of conduct and otherwise agreed and conspired together to violate the constitutional rights of Plaintiffs.

102. Each Defendant did reach this understanding and agreement and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Plaintiff of his right of due process, as guaranteed by the constitution.

103. Additionally, said conspiracy and joint action violated Plaintiff's 14th Amendment rights, under color of law, in contravention of 42 U.S.C. § 1983.

104. Acting in furtherance of this plan and conspiracy, Defendants did commit overt acts, including the illegal seizure, detention, assault, and search of Plaintiffs on August 2, 2013 and August 14, 2013, as more fully alleged in the preceding paragraphs.

105. This course of conduct by Defendants described in this count was done willfully, maliciously, intentionally, or with reckless disregard and gross negligence, and directly and proximately caused injury and harm to Plaintiffs.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for the injuries they suffered and continue to suffer, plus, Plaintiff seeks a substantial sum in punitive damages against Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count VI–Policy Claim - Monell Claim
(Against City of Chicago)

106. The misconduct of the Defendant Officers described in this Complaint were undertaken pursuant to the policy, practices, and customs of the CITY OF CHICAGO and were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY OF CHICAGO that are so pervasive that they carry the force of law.

107. Specifically, the CITY OF CHICAGO has a *de facto* policy, practice and/or custom of concealing and/or suppressing officer misconduct, including the commission of false arrest and the use of unlawful force. The CITY OF CHICAGO's concealment and suppression of the existence of police officer misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct; failure to accept complaints from citizens against police officers; purposely staffing investigators charged with investigating police misconduct complaints with biased investigators that discredit citizen complaints; failure to promptly record witness statements or preserve evidence when investigating citizen complaints against police officers; failure to promptly interview the accused or suspected officer after a citizen complaint has been made; failure to obtain sufficient documents to investigate a citizen complaint; failure to sufficiently discipline an officer, even where the complaint is sustained; fabrication of exculpatory evidence or destruction of evidence during the investigation of citizen complaints; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is so obviously true.

108. Likewise, the CITY OF CHICAGO has a *de facto* policy, practice and/or custom of failing to maintain accurate and complete records of complaints and investigation of misconduct.

109. Likewise, the CITY OF CHICAGO has a *de facto* policy practice and/or custom of hiring and retaining unqualified police officers, along with retaining police officer that have extensive and violent complaint records.

110. Likewise, the CITY OF CHICAGO has a *de facto* policy of delaying investigations of police misconduct until the applicable Statute of Limitations has run in order to aid in avoiding civil liability for CITY OF CHICAGO police officer misconduct.

111. Likewise, the CITY OF CHICAGO has a *de facto* policy, practice and/or custom of a "code of silence." This code is an implicit understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware. Including the use of unlawful force and falsification of police documents despite their

14

obligation to do so as sworn peace officers. This "code of silence" includes police officers who remain silent or give false or misleading information during official investigations into allegations of a fellow officer related to misconduct that occurred and that they witnessed in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability.

112. The CITY OF CHICAGO is complacent, intentionally indifferent, and directly encourages the "code of silence" through it purposely retaining a biased investigative agency that is charged with investigating police misconduct by implementing the *de facto* policy crediting police officers accounts and police officer credibility over citizen complainants. As a matter of policy, practice and custom he CITY OF CHICAGO fails to take into account an accused police officer's past history misconduct complaints when investigating a citizen complaint.

113. As a matter of both policy and practice, the CITY OF CHICAGO facilitates the type of misconduct at issue here by failing to adequately punish, discipline, investigate, or hold accountable prior instances misconduct, similar to those alleged by Plaintiffs here, of Chicago Police Officers; thereby leading Chicago Police Officers (like KELLY and WEBER) to believe their actions will never be scrutinized; and thereby directly encouraging future abuses such as those suffered by the Plaintiffs.

114. That the CITY OF CHICAGO knows and is intentionally indifferent to the fact that Chicago Police Officers accused of misconduct are aware that the CITY OF CHICAGO, through their investigative agencies and departments, be it the Independent Police Review Authority or Internal Affairs, will not fully investigate citizen police misconduct complaints, will always credit officer accounts over citizen allegations, will disregard all prior misconduct complaints when investigating new citizen complaints (regardless of how many an officer amasses), and will almost always refuse to recommend discipline to civilian complaints even where the officer has engaged in wrongdoing.

115. As a direct and proximate result of the CITY OF CHICAGO's failed policy, practices and/or customs, Chicago Police Officers, like Officer KELLY and WEBER, believed that they would never be held accountable for their unconstitutional actions against civilians.

116. The above acts and/or omissions of the CITY OF CHICAGO violated the Plaintiffs' rights under the United States Constitution.

117. As a direct and proximate result of the allegations set forth above, Plaintiffs TURNER and GREEN, have suffered substantial injury.

WHEREFORE, Plaintiffs' pray for judgment against the Defendant CITY OF CHICAGO in a fair and just amount sufficient to compensate them for the injuries they suffered and continue to suffer, plus, cost and reasonable attorney fees, and all such other relief this Honorable Court finds just and equitable.

                                              ELAINA TURNER and
                                              ULYSSES GREEN

                                              Plaintiffs,

                                              By:_____
                                                    Jeffrey B. Granich
                                                    Attorney for Plaintiff

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 1028
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030