UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINA TURNER and <br> ULYSSES GREEN, <br>       Plaintiffs, <br> vs. <br> CITY OF CHICAGO, ILLINOIS, and <br> CHICAGO POLICE OFFICERS <br> Patrick KELLY, Star No. 19397, <br> Jeffrey WEBER, Star No. 13854 <br> James KUBIK, Star No. 1397 <br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 15 CV 6741 <br><br> HON. SHARON J. COLEMAN <br><br><br><br><br> **JURY TRIAL DEMANDED** |

**MOTION FOR SANCTIONS AGAINST DEFENDANTS
PURSUANT TO FEDERAL RULE 26 AND RULE 37**

Plaintiffs, Elaina Turner and Ulysses Green, by Plaintiffs' attorneys, move this Court, pursuant to Fed. R. Civ. P. 26 and 37, for an order imposing sanctions against Defendants and their counsels for failing to respond and produce documents relating to the internal investigation and evaluations of Defendant Kelly. In support of this motion, Plaintiffs state as follows:

**BACKGROUND**

1. This is a § 1983 case against the City of Chicago and Chicago Police Officers Patrick Kelly, Jeffrey Weber, and James Kubik involving allegation of police misconduct, including excessive force, false arrest, conspiracy, failure to intervene, and *Monell* policy and practice claims against the City. Further, Plaintiffs' allege that the City of Chicago is liable for willful and wanton conduct, under Illinois State law, for employing Defendant Kelly with the authority of a Chicago police officer and arming him with weapons, despite its knowledge of

1

Defendant Kelly's violent and abusive tendencies towards the public. Defendant Kelly tased, Plaintiff Turner three times on August 2, 2013, resulting in a miscarriage.

2. Plaintiffs' counsel began representation of the Plaintiffs in August of 2013 following the criminal charges brought by the Defendants against them. Throughout the pendency of the criminal trial, Plaintiffs (then criminal-Defendants) subpoenaed IPRA, a City of Chicago agency, for all documents relating to internal investigations of Defendant Kelly and Defendant Weber.

3. In April of 2014, Defendant Kelly fatally shot and killed Hector Hernandez while on-duty during a domestic violence call. A LOG number 1068458 and U-file number 14-011 was created by IPRA and an investigation was initiated regarding this officer involved shooting.

4. On June 11, 2015, counsel for Plaintiffs' obtained an order from Circuit Court Judge Anita Rivkin-Carothers for IPRA to produce all CR files and internal investigations relating to Defendant Kelly. (See, Exhibit A.)

5. On June 29, 2015, IPRA, through its private counsel, purported to produce the entire CR-file and investigative file of Defendant Kelly in compliance of the Court's order. The IPRA investigative file relating to the LOG number 1068458 was not produced or identified in this production, despite IPRA having finalized the investigation in February 2015.

6. On July 2, 2015, a hearing was held before Circuit Court Judge Clarence Burch on a Rule to Show Cause and Sanctions Motion brought by Elaina Turner and Ulysses Green against IPRA for failing to comply with earlier subpoenas sent on them. Plaintiffs' counsel were unaware of the investigative file regarding Defendant Kelly's on-duty shooting. At that hearing, IPRA counsel, Molly Thompson, stated to the Court that IPRA had complied with the Court

Order and produced all files relating to Defendant Kelly investigations. (See, Exhibit B, Transcript of Criminal Proceedings July 2, 2015, hearing, p. 29, Line 7-9.)

      7.      On October 9, 2015, after a bench trial before Circuit Court Judge Clarence Burch, Elaina Turner and Ulysses Green were found not guilty on all charges.

      8.      In August of 2015, Plaintiffs filed their Amended Complaint that is before this Court.

      9.      On February 10, 2016, Plaintiffs served on Defendants Interrogatories and Request for Production. On March 29, 2016, the Court ordered the Defendants to respond to Plaintiffs outstanding discovery requests by April 8, 2016. (Dkt. 34.)

      10.      On April 8, 2016, Defendant City of Chicago answered Plaintiffs Interrogatories and Responded to Plaintiffs Notice to Produce. Defendant City routinely referred to the documents produced by IPRA in the criminal proceeding and CRMS reports as the complete CR and investigative file of Defendant Kelly. (See **Exhibit C**, Defendant City Answers to Interrogatories (Response 3, 4) and Responses to Notice to Produce (Response 7, 14, 15, 33, 34).) The City's interrogatory answers were certified by Eric Windstom of the Office of Legal Affairs. At no time did Defendant City produce or inform Plaintiffs of the 2014 fatal shooting incident or investigation of LOG# 1068458 regarding Defendant Kelly.

      11.      On April 8, 2016, Defendant Kelly answered Plaintiffs' interrogatories and referred Plaintiffs to the documents produced by IPRA in the criminal proceeding as the complete CR and investigative file of Defendant Kelly. (See, **Exhibit D**, Defendant Kelly Answer to Plaintiffs' Interrogatories (Answer 5).) At no time did Defendant Kelly produce or inform Plaintiffs that he was involved in a 2014 fatal shooting incident that resulted in an IPRA investigation under LOG# 1068458.

12. On April 20, 2016, this Court ordered the Defendants to turn over complaint register file materials under attorneys' and client eyes-only protection. Defendant City turned over CR files that did not include the IPRA investigation of Defendant Kelly's fatal shooting, nor did private counsel or Defendant City ever inform Plaintiffs of the existence of this investigation.

13. After counsel for Defendant Kelly cancelled his first scheduled deposition based on the Defendant City failing to produce certain documents, Defendant Kelly deposition proceeded on June 23, 2016. On June, 22, 2016, counsel for Defendant City sent Plaintiffs a one page document that indicated the Defendant Kelly was twice found unfit for duty following a psychiatric evaluation. The City produced no other documents pertaining to these examinations, despite these documents being requested on February 10, 2016. This was the first time Plaintiffs' counsel learned of Defendant Kelly's two failed psychiatric evaluations.

14. During the deposition of Defendant Kelly, Plaintiffs' learned for the first time through his testimony that he was involved in a 2014 on-duty police shooting that resulted in the death of a civilian and an IPRA investigation.

15. On June 25, 2016, Plaintiffs' counsel sent a Rule 37.2 letter to Defendant City and Defendant Officers demanding the disclosure of the investigation as to Defendant Kelly on-duty fatal shooting, and the two psychiatric evaluations that found Defendant Kelly unfit for duty. Plaintiffs further informed all Defendants counsel of the prejudice that occurred in preparing for Defendant Kelly deposition due to this non-disclosure. (See **Exhibit E**, Plaintiffs' 37.2 Letter.)

16. On June 28, 2016, Defendant City began to send certain documents to Plaintiffs relating to LOG# 1068458. Defendant City and Defendant Officers further agreed to reproduce Defendant Kelly for a deposition relating to issues of his psychiatric evaluations that found him unfit and relating to Defendant Kelly's on-duty fatal shooting under LOG#1068458 with

4

Defendant City bearing the cost. Plaintiffs' counsel had discussions with Defendant City counsel regarding sanctions against them for failing to disclose this information in a reasonable and timely manner. Defendants refused to pay for the reasonable attorneys' fees that Plaintiffs' counsel has expanded in attempting to obtain Defendant Kelly's complete investigative files from the City and IPRA since the beginning of the criminal case, along with the time spent preparing for Defendant Kelly's deposition despite not being provided all information requested, and the time needed to prepare for the re-deposition.

## ARGUMENT

It seems impossible to fathom that of all the attorneys that have been involved in this matter that none of them knew that Defendant Kelly was involved in a fatal police shooting. This is especially true in that Plaintiffs' counsel was able to obtain this information from Defendant Kelly after asking only a few questions of him during Defendant Kelly's deposition. Under Rules 26(e) and 37(c), federal courts may level appropriate sanctions against a party, and their attorneys, that fail to timely produce, supplement, or correct its discovery responses. Rule 26(g), states that an attorney's signature on discovery responses, "certifies that the lawyer made a reasonable effort to assure that the client has provided all of the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g).

Here, the Defendants, through their respective counsels, failed to make a reasonable effort to assure that they had provided all information and produced all documents requested and available regarding Defendant Kelly's violent background and internal investigations. The Defendant City failure to disclose to Plaintiffs its IPRA investigation relating to Defendant Kelly's fatal police shooting is, at best, proof of a lack of due diligence, and at worst deliberate and intentional attempt to hide this information from the Plaintiffs. Either way, such actions

warrant the imposition of sanctions as they have hindered the Plaintiffs legal right to obtain information.

Instead of doing their duty to make reasonable inquiry that Plaintiff had been provided all documents relating to Defendant Kelly history, the Defendant City and the Defendant Officers referred Plaintiffs when asked by Plaintiffs' discovery requests to the incomplete investigative CR history Plaintiffs obtained from IPRA during the criminal preceding. Defendant City's representation, and IPRA's in Court representation during the criminal proceeding, that this file was complete and that all internal investigations of Defendant Kelly had been tendered has now been shown to been false.

Counsel for Defendant City failed to conduct a reasonable inquiry to Plaintiffs discovery demands or purposefully attempted to hide the fatal shooting investigation from Plaintiffs. Defendant City had the obligation to provide or to confirm that Plaintiffs had the complete background of Defendant Kelly. In failing to inform or disclose the Plaintiffs of Defendant Kelly's fatal shooting incident they disobeyed two court orders. They failed to produce the fatal shooting CR during the criminal trial after a court order, and again failed to disclose it during discovery in this federal civil lawsuit. Such continuous noncompliance and discovery violations warrant sanctions.

Furthermore, all Defendants failed and/or were evasive in responding to Plaintiffs' numerous discovery requests regarding information relating to internal investigations of Defendant Kelly. Defendant City and Defendant Officers routinely referred Plaintiffs to the documents they received from IPRA during the criminal matter in this case when responding to Plaintiffs requests for all investigative files. Again, this was done either intentionally or Defendants counsel failed to review the documents Plaintiffs produced to insure that all the

investigative files were there. Had this simply been done, Defendants would have known that Plaintiffs did not have any IPRA documents relating to Defendant Kelly's fatal shooting. Fed. R. Civ. P. 26(g) imposes upon counsel "an affirmative duty under Rule to make a reasonable inquiry into the basis of their discovery responses and to "stop and think about the legitimacy of [those responses]." *Metro. Opera Ass'n v. Local 100, Hotel Employees*, 212 F.R.D. 178, 221 (S.D.N.Y. 2003). The Defendants, and their counsels, did not live up to their duty in this case.

The Court has broad discretion to impose sanctions for discovery violations, deriving from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. Defendants, along with their counsels, are subject to specific sanctions under Rules 26 and 37 of the Federal Rules of Civil Procedure.

The relief specifically requested at this time by Plaintiffs is remedial in nature. The Plaintiffs counsel seeks reasonable attorney fees for all the time that it incurred to obtain the complete CR and investigative files from the City and IPRA throughout this and the criminal litigation, which we now know turned out to be fruitless and incomplete. Plaintiff further seeks leave to depose IPRA and City personnel, and agents that were responsible for turning over such documents in order to uncover whether this was done intentionally. Plaintiffs have been demanding and litigating with IPRA and the City for Defendant Kelly's complete records since the criminal case, where Plaintiffs were falsely informed that all files were tendered, and the concealment of Kelly's fatal shooting is astonishing. Again, it is hard to believe that a shooting incident investigation that resulted in a death could be overlooked or mistakenly lost by IPRA. As such, in addition to compensation for the fruitless time Plaintiffs counsel endured to this point in attempting to obtain these files, punitive sanctions against IPRA (i.e. City) is warranted in this

case as its actions of hiding and not disclosing the investigation of Defendant Kelly's on-duty fatal police shooting is unconscionable.

**WHEREFORE**, Plaintiffs request the following sanction orders be entered:

(a) That Defendant City of Chicago, Defendant Kelly, and their respective counsels be ordered to pay the reasonable attorney's fees that Plaintiffs' counsel have incurred in preparing for the deposition of Defendant Kelly without being provided the requested documents pertaining to Defendant Kelly's prior fatal shooting and time in preparing and conducting the re-deposition of Defendant Kelly.

(b) That Defendant City of Chicago and their respective counsels be ordered to pay reasonable attorney fees for the time Plaintiffs' counsel spent with IPRA during the criminal proceedings in an attempt to obtain the complete investigative files of Defendant Kelly.

(c) Punitive sanctions against IPRA and City of Chicago for violating a court order by failing to produce all investigative files of Defendant Kelly.

(d) Certification be provided by Defendants counsel that a complete and exhaustive search has been conducted and all investigative files relating to Defendant Kelly have been produced.

(e) Allow for depositions to be conducted of IPRA and City personnel responsible gathering and providing Defendant

(f) Any and all other relief this Court deems just and equitable.

Respectfully submitted,

ELAINA TURNER and
ULYSSES GREEN, Plaintiffs,

By:___/s/ *Jeffrey Granich*_____
       Jeffrey B. Granich

8

Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 1028
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030

**CERTIFICATE OF SERVICE**

I, Joshua Morrison, hereby certify that I served a copy of the foregoing Notice of Motion by this Court's ECF system on this 29th day of June, 2015, to all counsels of record.


*/s/ Joshua Morrison*