```
1 STATE OF ILLINOIS    )
                       )   SS:
2 COUNTY OF C O O K    )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - FIRST MUNICIPAL DIVISION
4
  THE PEOPLE OF THE STATE      )
5 OF ILLINOIS,                 )
                               )
6              Plaintiff,      )
                               )   No.  13-1-220426
7        vs.                    )        13-1-220227
                               )   Branch 46
8 ULYSSES GREEN and,           )
  ELAINA TURNER,               )
9              Defendants.     )

10             REPORT OF PROCEEDINGS had at the hearing

11 in the above-entitled cause before the Honorable

12 CLARENCE L. BURCH, Judge of said court, on the 2nd day

13 of July, 2015.

14     PRESENT:

15         HONORABLE ANITA M. ALVAREZ,
           State's Attorney of Cook County, by:
16         MR. DAVID NEAL,
           Assistant State's Attorney,
17             appeared on behalf of the People;

18         MR. JEFFREY GRANICH,
               appeared on behalf of the Defendants;
19
           Independent Police Review Authority, by:
20         MS. MOLLY THOMPSON and MS. WENDY LISS.

21

22 EDITH M. SMITH, CSR #084-003976
   Official Court Reporter
23 69 W. Washington Street
   Chicago, Illinois 60602
24
```

1

1    THE CLERK:  Recalling Ulysses Green and Elaina

2 Turner.

3    THE COURT:  Green.  Officers are in court.

4    MR. GRANICH:  Good morning, your Honor.  For the

5 record, Jeffrey Granich, G-r-a-n-i-c-h, on behalf of the

6 defendants Ms. Turner and Mr. Green.

7            Judge, it's kind of difficult to figure

8 out where to begin.  On the last date in front of your

9 Honor there was a court date in between which I will get

10 to in a moment.  But on the last date before your Honor

11 we were set for trial.  IPRA had sent some information

12 to the State in response to the subpoena that I had

13 issued.  The State wanted a date to review to make sure

14 that they had all the IPRA material.  I had filed a

15 Lynch motion regarding a case that I had found on Pacer

16 regarding a federal case that involved Officer Weber and

17 Officer Kelly.  At that time, your Honor gave me leave

18 to add anything additional I could discover in regards

19 to supporting my Lynch motion.

20            Since that time, Judge, an absolutely

21 staggering amount of information that has been purposely

22 and intentionally withheld from me for over two years

23 has come to light.  Specifically, we have filed

24 yesterday a supplemental motion pursuant to the Court's

2

1 leave regarding the material that I had discovered; and

2 then in the meantime while your Honor was away, issued

3 subpoenas and got IPRA to begin to give me all of this

4 material.  I don't know if we have it all, but we have a

5 lot of it.

6              Judge, in summary, what we have learned

7 between the last court date and today is that Officer

8 Kelly has 22 separate IPRA complaints and OPS complaints

9 for excessive force.  He has been arrested twice, the

10 most recent arrest involves his attack on a Chicago --

11     THE COURT:  Wait a minute.  Where are we going with

12 this information?

13     MR. GRANICH:  Where we're going Judge is several

14 different places.  Number one, all of this material

15 specifically two and three, maybe even four specific

16 acts of violence against women, which is what we're

17 alleging in our Lynch motion --

18     THE COURT:  First of all, why are owe here today?

19     MR. GRANICH:  It's set for trial.  Final set for

20 trial.

21     THE COURT:  Is it set for trial today?

22     MR. NEAL:  Judge, I --

23     THE COURT:  That's not what my -- what does this --

24 I don't understand what this order says.  There was

3

1 another judge here, right?

2     MR. GRANICH:  Yes.

3     THE COURT:  It does not say set for trial.

4     MR. GRANICH:  We understood it was set for trial.

5     MR. NEAL:  In between the time that it was I

6 believe set for trial on the last court date, which was

7 in May --

8     THE COURT:  It says by agreement, TTD.  What does

9 that mean?

10     MR. NEAL:  The file does not say trial either.  It

11 says by agreement final.

12     MR. GRANICH:  Again, we were told this was set for

13 final trial.

14     THE COURT:  Well, how can it be set for trial if

15 you are still receiving subpoenaed information?

16     MR. GRANICH:  That's why we actually set the date

17 to return the subpoenas between the last time we were in

18 court and today.

19     THE COURT:  What date did you set for the return?

20     MR. GRANICH:  I believe it was June 26th so that we

21 would in fact be ready for trial today.

22     THE COURT:  So are you answering ready?

23     MR. GRANICH:  Yes, we are, Judge.

24     THE COURT:  But you can't be feeding me information

4

1  about what's going on with the trial if it's set for

2  trial.  Bring out your information during the trial.  If

3  you have a motion, file your motion.

4      MR. GRANICH:  We did.  We filed a Lynch motion and

5  we are now --

6      THE COURT:  Are you arguing your Lynch motion?

7      MR. GRANICH:  We would like to argue our

8  supplemental material that we obtained to support the

9  Lynch motion that we have already argued.

10     THE COURT:  Whoever is going to review this, it

11  must be reviewed.  You come up here telling me about

12  what you discovered, blah, blah, blah -- you have to put

13  it in the context of a motion.

14     MR. GRANICH:  We did, and you have it in the file.

15     THE COURT:  But you've got to say that -- I'm

16  answering ready on our motion and I'd like to argue my

17  motion.  You just can't start going off --

18     MR. GRANICH:  Judge, I apologize.  Not a problem.

19  Judge, we have filed yesterday, and I gave a copy to the

20  State, a supplemental motion.

21     THE COURT:  You filed it yesterday.

22     MR. GRANICH:  Yes.  Because we just got the --

23     THE COURT:  Did you receive it yesterday?

24     MR. NEAL:  Judge, I personally received it

5

1 yesterday.

2    THE COURT: Are you answering ready on it today?

3    MR. NEAL: Judge, I'm not and I would not waive

4 notice concerning the Lynch motion. This is a

5 supplemental motion. The initial motion I believe was

6 either denied by your Honor or it was given time for the

7 defendant to --

8    THE COURT: It was denied. I remember.

9    MR. GRANICH: It wasn't denied. Actually, we had

10 withdrawn it and then when the State was not ready --

11    THE COURT: Oh, you withdrew it.

12    MR. GRANICH: Judge, if I may, when the State

13 answered not ready on the last court date, your Honor

14 allowed me -- you gave me leave to supplement my Lynch

15 motion and I took that leave and I have now done so.

16    THE COURT: But you just filed your motion today.

17    MR. GRANICH: Yes.

18    THE COURT: How are you going to file it the day of

19 trial?

20    MR. GRANICH: I filed it yesterday. If I may,

21 Judge, the reason we were only able to file it yesterday

22 is I didn't get the 3,000 pages of IPRA documents until

23 Monday. So once we got the 3,000 pages on Monday, and

24 your Honor got that disk as well, and so did the State.

6

1  I then spent 12 hours reviewing the 3,000 pages of IPRA

2  material, produced my supplemental motion, and filed it

3  yesterday.

4      THE COURT:  You filed it yesterday.  It took you 12

5  hours to review it and you expect them to be ready.  You

6  haven't even seen it.

7      MR. GRANICH:  Judge, I have no objection if the

8  State wants to reply to this motion.

9      THE COURT:  That's going to be the order.  How much

10  time do you need to reply?

11      MR. GRANICH:  Additionally, Judge, there were two

12  other --

13      THE COURT:  Well, let's just deal with that issue.

14  How much time do you need to reply?

15      MR. NEAL:  We would be asking 21 days to reply.

16      THE COURT:  You'll be given 14 days to respond.

17  21, 14 -- so that would take us into six weeks.  So

18  we'll come back -- officers will be excused on the next

19  court date.  Officers are excused for legal arguments.

20  What date?  Can you agree on a date?

21      MR. GRANICH:  Sure.  Six weeks, Judge?

22      THE COURT:  Yes.

23      MR. NEAL:  Judge, I think we would be looking at --

24      THE COURT:  August 13th.

7

1    MR. GRANICH:  Judge, can we do the 10th, that's

2 Monday?

3    THE COURT:  That's fine.  Is that date convenient

4 to you, State?

5    MR. NEAL:  Yes, Judge.

6    THE COURT:  7/10 -- I mean 8/10/15, argument on

7 Lynch motion.

8    MR. GRANICH:  So they're going to respond and I'm

9 going to reply; is that correct?

10    THE COURT:  Yes.  21, 14 -- you have 14 days.  You

11 have a second issue?

12    MR. GRANICH:  Actually, two more issues.  On the

13 last court date when your Honor was not here, we filed a

14 rule to show cause and a motion for sanctions against

15 IPRA.  IPRA has filed a response to that motion.

16    THE COURT:  Did you receive the discovery?

17    MR. GRANICH:  I did, but there is an issue.  I

18 still believe there is an issue.

19    THE COURT:  What's the issue now?

20    MR. GRANICH:  In the pendency of this two-year

21 misdemeanor case we subpoenaed IPRA over three times for

22 material, and they never disclosed it.  And it wasn't

23 until I began to learn of this material through outside

24 sources that I was able to -- I don't know the right

1 word for it -- but to get IPRA to get me these

2 documents.

3           I believe what's I think ironic, Judge,

4 during the two years that I have been trying to get

5 information about Officer Kelly's IPRA file and have not

6 received it, the City and IPRA are being sued in Federal

7 Court for failure to investigate and failure to

8 discipline Officer Kelly.

9           During the pendency of this case they have

10 done precisely the same thing in this case.  I asked

11 them for --

12     THE COURT:  First of all, let's slow down.  Did you

13 put this motion in writing?

14     MR. GRANICH:  Yes.  It's in the file.  And they've

15 responded to it.

16     THE COURT:  You've responded to the motion?

17     MS. THOMPSON:  Good morning, your Honor.  Molly

18 Thompson for IPRA, and I'm joined by Wendy Liss,

19 L-i-s-s, who is also appearing for IPRA.

20           We have filed a response and we delivered

21 a copy to you yesterday.  It was late in the day, so I'm

22 not sure if you received it.

23     THE COURT:  Are you ready to argue it today?

24     MR. GRANICH:  And Judge, here is my reply to their

9

1 response.

2     THE COURT: First, let me have a copy of your

3 motion.

4     MS. THOMPSON: Here's another copy of the response.

5     MR. GRANICH: Judge, you should have a copy in your

6 file --

7     THE COURT: Is there a copy in the file?

8     MR. GRANICH: I have a copy, Judge.

9     THE COURT: All parties be seated, sit down. This

10 is going to be a minute. You may be seated with your

11 client over there. You may be seated at the prosecution

12 table.

13     MR. GRANICH: Factual background on this case, my

14 client was arrested -- Ms. Turner was arrested on August

15 2, 2013. At that time she was tased repeatedly by

16 Officer Kelly. She was pregnant at the time and

17 suffered a miscarriage based on that activity by Officer

18 Kelly.

19     THE COURT: What year was that?

20     MR. GRANICH: This was August 2013.

21     THE COURT: Okay.

22     MR. GRANICH: Within days of that attack my client

23 and her husband went to IPRA and made a complaint. They

24 gave audiotaped statements regarding the allegations

1  they made against Officer Kelly.

2          During the pendency of this case I have

3  prior to May of this year on three separate occasions

4  going back to I believe my first subpoena was in 2013 or

5  2014. I had repeatedly asked IPRA to produce --

6      THE COURT: Do you have copies of those subpoenas?

7      MR. GRANICH: I do.

8      THE COURT: Are they attached to your motion?

9      MR. GRANICH: They are, Judge.

10     THE COURT: What exhibits are they?

11     MR. GRANICH: The first subpoena was issued

12 December 9, 2013. That's exhibit -- actually, these are

13 found in IPRA's response.

14          Exhibit A, my first subpoena, that was

15 issued December 9, 2013. Exhibit B, I believe there was

16 another subpoena that they don't have from 2014, and

17 then there was another subpoena, Exhibit B in 2015.

18          Judge, my original subpoena back in 2013,

19 a few months after this case began, asked for any and

20 all documents, notes, records, statements your office

21 has created or obtained as a result of the complaint

22 made against the Chicago Police Department.

23          Judge, we asked for everything in their

24 investigation of this complaint against Officer Kelly.

11

1  At that time in 2013 he had over 20 complaints of

2  excessive force.  He had already been arrested twice.

3  During the pendency of this case one of those arrests

4  led to a 60-day suspension.  That arrest and that

5  suspension related to his attack on a Chicago Police

6  sergeant.  All of this going on during the pendency of

7  this case while my subpoenas were being issued.

8              I have received none of this information

9  from IPRA, despite numerous phone calls with their chief

10  counsel, Eric Muellenbach.  Numerous --

11        THE COURT:  When you say numerous, you have to list

12  the dates and give me some -- you can't just go on --

13        MR. GRANICH:  Judge, I spoke to Eric Muellenbach --

14        THE COURT:  Give me dates -- dates.

15        MR. GRANICH:  Judge, I don't have the dates of

16  every phone call I ever made.  I can --

17        THE COURT:  Give me one date.

18        MR. GRANICH:  Judge, I have a letter from March of

19  this year discussing a phone call I had with Mr.

20  Muellenbach that was -- I have a letter from Inglehong,

21  (phonetic) an attorney with the Independent Police

22  discussing our conversation.  That's in April of this

23  year.  I have a letter that I wrote I believe in March

24  of this year.  Judge, I apologize.  I can get it for you

12

1 in a moment.

2          But during the pendency of this case for

3 two years while I have been fighting with IPRA to get

4 these records, none of this information was given to me

5 or alerted to me that even any of these files existed.

6          As I mentioned a moment ago, ironically

7 during the pendency of this case there is a federal case

8 in front of Judge Leinenweber involving Officer Kelly

9 where the allegation is that IPRA and the City are

10 purposely withholding information from attorneys about

11 Officer Kelly's background.  They are specifically

12 charged with a conspiracy in violation of Constitutional

13 rights that they are not investigating Officer Kelly.

14          By the way, as a side note, during the two

15 years that this investigation that IPRA has been

16 conducting against Officer Kelly based on my client's

17 allegations, Officer Kelly has yet to be interviewed by

18 IPRA about tasing a pregnant woman into miscarriage.

19 He's never been interviewed in two years while IPRA is

20 being sued for failure to investigate Officer Kelly.

21          But that's a side note.  The point Judge,

22 is they have all of these records because they're being

23 tendered to plaintiff's counsels in Federal Court --

24 three separate federal lawsuits against Officer Kelly

13

1 where this material is being tendered to other lawyers,

2 but it's not being tendered to me.

3          Now, IPRA's response is that I didn't ask

4 for these files.  I asked for every document they

5 obtained during the investigation of Officer Kelly based

6 on my client's complaint.  I believe that leads us to

7 two possibilities.

8     THE COURT:  Direct me to where you made that

9 request.

10     MR. GRANICH:  The rider in Exhibit A, the State's

11 response.

12     THE COURT:  The State's response?

13     MR. GRANICH:  IPRA's response to my motion for

14 sanctions, Exhibit A.

15     THE COURT:  Wait a minute.

16     MR. GRANICH:  Exhibit A.  There's a rider attached

17 to my subpoena.

18     THE COURT:  Okay.

19     MR. GRANICH:  And the rider asks for -- this is

20 back in December of 2013.

21     THE COURT:  Read it into the record, sir.

22     MR. GRANICH:  "Please produce any and all

23 documents, notes, records, statements your office has

24 created or obtained as a result of the complaint made

14

1 against the Chicago Police Department by Elaina Turner

2 and/or Ulysses Green regarding an incident which

3 occurred on or about August 2, 2013 at or near 718 West

4 54th Place around 4:56 p.m.

5          "This request includes, but is not limited

6 to all photographs taken or received by IPRA, all audio

7 and video recordings taken or received, all OEMC

8 recordings received by IPRA, and any and all police

9 documents or statements received by IPRA."

10          Now, Judge, at that time they had

11 thousands of pages -- in 2013 they had thousands of

12 pages of complaints against Officer Kelly including

13 arrest reports, investigations by OPS and IPRA, et

14 cetera.

15     THE COURT:  Let me hear that first sentence.  Read

16 that again.

17     MR. GRANICH:  "Please produce any and all

18 documents, note, records, statements your office has

19 created or obtained as a result of a compliant made --"

20     THE COURT:  Of a complaint.

21     MR. GRANICH:  Right.  So Judge --

22     THE COURT:  How do you get all complaints out of

23 that?

24     MR. GRANICH:  Very easily, Judge.  When they begin

15

1 an investigation --

2     THE COURT:  That's an article isn't it -- a?

3     MR. GRANICH:  It is, Judge.  No, I'm asking for

4 documents -- notes, photographs.  Judge, when I asked

5 for their investigation, all documents that they've

6 obtained in their investigation, I'm assuming that when

7 IPRA does an investigation of an officer of an

8 allegation of force, one of the things they do is they

9 look at his record.

10          They look to see as -- by the way, Judge,

11 any state's attorney, any officer doing an

12 investigation, one of the first things they do is check

13 the background of an individual they're investigating.

14          I don't believe that it's IPRA's policy

15 when they are investigating an officer not to check his

16 background.  Once they have checked his background, they

17 have access and they have obtained all of these records.

18          Judge, I will go even further.  In

19 December of 2013 IPRA had already tendered thousands of

20 pages of this.  They had already obtained his criminal

21 history, his complaint history, and tendered it to other

22 lawyers as of 2013.  They had it.  They had it in his

23 file.  And when they investigated it based on my

24 complaint, they have all of these documents in his file.

16

1 They have obtained all of his criminal history, all of

2 his arrest reports, all of his complaint history, they

3 have it all.  They've obtained it during this

4 investigation.

5          Now, if they want to stand before your

6 Honor as they've argued in their response, that they did

7 not get Officer Kelly's complaint history when they

8 investigated him, I find that extremely difficult to

9 believe.  Especially considering the fact, Judge, that

10 they had already obtained all of these records and

11 disclosed these records on other federal lawsuits.

12          They can't say that they do an

13 investigation of Officer Kelly for two years and don't

14 have these records, have not obtained those records?

15 They have them.  And they have obtained them, and they

16 never gave them to me.

17          On the last court date before your Honor,

18 when we were set for trial the State asked for a

19 continuance because they wanted to make sure in their

20 words that they had everything.  At that point before

21 your Honor, after three separate subpoenas to IPRA, as

22 we are set for trial none of this information had been

23 disclosed to the State or to myself, after three

24 subpoenas.  If we had gone to trial on that date, none

17

1 of this information would have come to light.

2          It was only because your Honor asked me or

3 gave me leave to find out more, that we did.  When we

4 began to dig and when we began to get this information,

5 Judge, I will honestly tell you in over 20 years of

6 practicing law I have never experienced this type of

7 intentional refusal, hiding of relevant documents that I

8 have requested -- ever -- in any case whatsoever.

9          Again, I find it staggering that this

10 information was withheld from me while IPRA is being

11 sued for withholding information in Federal Court.  By

12 the way, there is a statement recently Judge Leinenweber

13 in that federal case stated as follows when denying the

14 City's motion to dismiss.

15          He stated, "In a four-year time frame,"

16 this is the case of Laporte versus City of Chicago, 14

17 CV 9665.  This is Judge Leinenweber's opinion of April

18 24, 2014, a year after I had issued my first subpoena.

19          "In a four-year time frame, Officer Kelly

20 amassed 15 CR's alleging excessive force and other

21 wrongdoing.  The Court finds that the City's knowledge

22 of these complaints could give rise to a duty not to

23 retain Officer Kelly."

24          This is a year ago.  The City and IPRA are

18

1  named defendants in this lawsuit.  They're refusing to

2  give lawyers this information while they're doing the

3  same thing to me.

4      THE COURT:  Let me ask you this.  When you say they

5  are doing same thing, are the same elements that you are

6  raising now, was that raised in the --

7      MR. GRANICH:  Yes.  One of the allegations in the

8  federal complaint in front of Judge Leinenweber is that

9  IPRA --

10      THE COURT:  So is this same complaint being

11  considered in a federal forum?

12      MR. GRANICH:  One, of them yes.

13      THE COURT:  What do you mean one of them?

14      MR. GRANICH:  The issue of failure to investigate.

15  Judge, I believe that during the two years that this

16  case has been pending, Officer Kelly, who has not been

17  interviewed, shows a failure to investigate Officer

18  Kelly on the part of IPRA.

19          I asked Mr. Muellenbach, chief legal

20  counsel for IPRA, how is it that in two years Officer

21  Kelly with over 20 excessive force complaints has never

22  been interviewed on this case.  And his response was, I

23  have no idea.  I have no idea."

24      THE COURT:  Anything further?

19

1      MR. GRANICH:  Sure, Judge.  We got this

2  information -- I also find it ironic that one of the

3  statements in the IPRA lawyer -- not actually IPRA, it's

4  the Dykema Law Firm hired by IPRA to represent them

5  before your Honor, in their response, they state that if

6  I wanted these specific files I should have asked for

7  these specific files.

8            That's kind of the chicken and the egg

9  argument, Judge.  How do I know that they exist if they

10 don't give them to me?  Judge, I didn't find out about

11 this extensive criminal history and extensive complaint

12 history and federal lawsuits because anybody at the City

13 told me, despite numerous subpoenas.  I found it out

14 through other means.

15           And if I had not found it out through

16 other means, they never would have given it and they

17 never would have told me, as indicated by the fact that

18 the last time we were before your Honor after issuing a

19 third subpoena asking for everything, what did we get?

20 Nothing.  Not one IPRA complaint against this guy, even

21 though he has 22.  Not one mention that he had been

22 arrested twice.  Not one mention that he had been

23 suspended for 60 days for attacking a Chicago police

24 female sergeant.  Not one word of this was disclosed to

                              20

1 me.

2          That's why we are asking for sanctions

3 against IPRA, because they cannot continue to do this

4 and think that they can get away with it because nobody

5 is going to do it.  Then they finally get caught and

6 have to cough it all up.

7          Judge, if I did this, if I got a subpoena

8 asking for my investigative file and I have 3,000 pages

9 in my office, I got the exact same worded subpoena and I

10 have 3,000 pages of documents on a witness that I have

11 investigated on a criminal case, and the State gives me

12 a motion for discovery and I sit for two years on 3,000

13 pages of material and don't hand it over?  I would

14 expect to lose a law license that I'm still paying for.

15 And they think they can get away with it because finally

16 after I caught them they cough it up?  No way.  No way.

17          Again, Judge, they stood before you.  IPRA

18 gave your Honor what they said was their entire file

19 against Kelly.  Yesterday or this week you got 3,000

20 pages from IPRA.  Where was that in May?  Because we

21 didn't know it existed then, so they didn't give it to

22 us.

23          So Judge, I feel that at this point --

24 your Honor asked a really good question.  Did you get

21

1 it?  If you got it, what's the problem?  Ordinarily I

2 would agree with you, but not now.  Not after two years

3 of -- Judge, my client is charged with attempted

4 resisting.  Two years this case has been pending, and

5 for only one reason.  Because I have been fighting with

6 IPRA for two years.  Two years I have been fighting IPRA

7 to get this material.

8              Then I sit down with the plaintiff's

9 attorney who tells me he's suing IPRA for failing to

10 investigate the same officer I am trying to investigate.

11 Judge, I couldn't write this because nobody would

12 believe it, but it's true.  So please do something.

13     THE COURT:  What sanctions are you seeking?

14     MR. GRANICH:  I think that the IPRA investigators

15 in charge of this case should be brought before you.  I

16 think the chief legal counsel of IPRA should be brought

17 before you.  I think you should ask them did you have --

18 in 2013 did you have Officer Kelly's 3,000 page

19 complaint history?  Did you look at it in regards to Mr.

20 Granich's IPRA complaint and not give it to him?

21     THE COURT:  And what sanctions are you asking for?

22 You're telling me the process, and I'm asking you the

23 sanctions.

24     MR. GRANICH:  I think some combination of, as in

22

1 any criminal case, I think some combination of financial

2 and disciplinary measures should be brought to bear.

3      THE COURT:  Such as what?

4      MR. GRANICH:  I think a financial fine of thousands

5 of dollars for each month this material was not

6 tendered.  I think letters to the ARDC regarding lawyers

7 that willfully failed to turn over this material should

8 be written.

9           Judge, when I first met the private

10 counsel retained by IPRA, she informed me that she had

11 just been assigned to this case and needed some time to

12 get up to speed.  Then I found during my investigation

13 that she had previously represented Kelly in a

14 deposition in a federal lawsuit two years ago.

15           Judge, the lies regarding Officer Kelly

16 don't seem to stop.  So I think that a financial

17 penalty, I think disciplinary letters to ARDC regarding

18 lawyers that are willfully failing to abide by the rules

19 of discovery, failing to fulfill their requirements

20 under the laws regarding subpoenas should be issued.

21           But again, first and foremost, I think a

22 financial fine against IPRA for thousands of dollars for

23 every month since December 2013.  As they say, Judge,

24 money talks.  So I think it's time to talk to IPRA very

23

1 loudly and let them know that they can't continue to

2 play this game.

3            Again, Judge, this is not a complaint that

4 my client got pushed, or my client got slapped.  My

5 client was tased repeatedly by Officer Kelly because he

6 was trying to tow a car.  A car, that when it got towed

7 returned to my client because it was a bad tow.

8            She got tased so repeatedly that she

9 suffered a miscarriage at the hands of Officer Kelly.

10 By the way, Officer Kelly's girlfriend, who is the

11 subject of an OPS complaint that was sustained, went to

12 the hospital with several stitches in her head.  Several

13 months later, this girlfriend's brother had his nose

14 broken by Officer Kelly, and he got arrested for it.

15 Several years later, when one of Officer Kelly's friends

16 gets shot in the back of his head with Officer Kelly's

17 gun, and Officer Kelly -- the police arrive at Officer's

18 Kelly's home, and Officer Kelly attacks a Chicago female

19 police sergeant and gets a 60-day suspension.

20            This is the officer that they are

21 protecting.  This is the officer that they spent two

22 years hiding this record from me.  Why?  I don't know.

23 But this is their choice to represent this guy.  This is

24 their choice to protect this guy.  I don't know why,

24

1 when he's attacking Chicago police officers.

2          I don't know why, but that's not my

3 problem.  My problem is I'm trying to represent my

4 client and they have spent two years preventing me from

5 doing that.

6          Again, only by the luck of the State not

7 being ready on the last trial date and your Honor very,

8 I think, reasonably and I now say thankfully, allowed me

9 time to continue to do this research that bought all of

10 this to light.  Otherwise, I never would have known it.

11 I never would have known it.

12     THE COURT:  Counsel.  Thank you, sir.

13     MS. THOMPSON:  Your Honor, IPRA never received any

14 subpoena for all complaints against Officer Kelly or

15 Officer Weber until June 4, 2015 which is attached to

16 our response as Exhibit C.

17          There were three prior subpoenas issued in

18 December 2013 which Mr. Granich read into the record,

19 and then Exhibit B is the subpoena issued in March

20 2014 -- excuse me, 2015.  And that March 2015 subpoena

21 likewise -- I can read it into the record if you'd like.

22     THE COURT:  Go ahead.

23     MS. THOMPSON:  "Please produce any and all

24 documents, notes, records and statements IPRA has or

25

1 created or obtained as a result of the complaint made

2 against the Chicago Police Department by Elaina Turner

3 and/or Ulysses Green under Log No. 106399," which is in

4 bold, "regarding an incident which occurred on or about

5 August 2, 2013 at or near 718 West 54th Place around

6 4:56 p.m."

7             "This request includes but is not limited

8 to all photographs taken or received by IPRA, all audio

9 recordings and statements made by Chicago police

10 officers received by IPRA, any and all statements made

11 to IPRA, any and all video recordings taken or received

12 by IPRA, any and all OEMC recordings received by IPRA,

13 any and all police documents or statements received by

14 IPRA."

15             There were two subpoenas before, neither

16 of them asked for all complaints against Officer Kelly

17 or Officer Weber.  It wasn't until June 4th that we

18 received a subpoena for those documents, and it had a

19 return date of June 11th.  We came into court on June

20 11th and asked for additional time.  Judge

21 Rivkin-Carothers granted us until June 26th to produce

22 those files, which we did.

23             I think Mr. Granich referred to another, a

24 third subpoena before in May, but I have only seen those

26

1  two prior subpoenas.  I asked Mr. Granich to send me all

2  prior subpoenas.  I don't know what --

3      THE COURT:  Let me ask you this.  Is it your policy

4  to only turn over IPRA files that relate to that

5  specific incident?  You don't -- if there are requests

6  made of IPRA, aren't you obligated to turn over all

7  files related to the individual?

8      MS. THOMPSON:  If that's what it requests.  This

9  request --

10      THE COURT:  No, I understand.  It's been my -- when

11  I get IPRA files and responses, they include every

12  complaint that's made against the officer.  They don't

13  limit it to that case only.

14      MS. THOMPSON:  Not when we receive a request for

15  file documents under a log number and give a specific

16  number.  We'll give them that file.  We're not going to

17  give them every single file of every complaint filed

18  against that officer.

19          We do -- if in the file there is a

20  complaint history, we produce that.  In this file, it's

21  still an open investigation so there wasn't a complaint

22  history run yet.

23      THE COURT:  So wait a minute.  So the reason why

24  you didn't do it is because there was -- okay.  Why

27

1  wasn't he investigated?

2      MS. THOMPSON:  He was investigated.  We produced --
3  we produced documents --

4      THE COURT:  He was investigated shortly after this
5  incident?  He just stated that he's never been
6  interviewed.

7      MS. THOMPSON:  He has not given a statement in this
8  investigation.

9      THE COURT:  Was he interviewed?  Was he in a
10  position where he said I'm not going to give a
11  statement?

12      MS. THOMPSON:  I don't believe so.

13      THE COURT:  So he was never -- no one ever talked
14  to him?  Nobody --

15      MS. THOMPSON:  It's still an open investigation.

16      THE COURT:  Two years.

17      MS. THOMPSON:  Yes.  I do not know the status or
18  what the reason behind that is, but it's still --

19      THE COURT:  Let me ask you this.  What relief are
20  they seeking in the federal case?

21      MS. THOMPSON:  I'm not a part of the federal case.
22  I believe that it comes from a Manell claim, which would
23  be a police practice claim against the City.

24                Here, the issue is simply whether we -- in

28

1 order to seek sanctions or the contempt of Court, which

2 I believe defendants have been seeking, they have to

3 show a willfully disobeyed court order.  The two

4 subpoenas here did not ask us to produce all complaints

5 against these officers.  They asked us for the documents

6 relating to this investigation, which we produced.

7          It wasn't until June 4th, as you can see

8 that subpoena, that they asked for all complaints.  We

9 produced all complaints to comply.  There's no order

10 that we haven't complied.  There's no basis --

11     THE COURT:  So you're saying that even after this

12 subpoena did you receive -- he didn't get -- he said he

13 had to go to outside counsel, someone else to get the --

14     MR. GRANICH:  If I may --

15     THE COURT:  To get the 3,000 --

16     MR. GRANICH:  Judge, I was never told by IPRA that

17 there were any prior complaints against this officer.

18     THE COURT:  Did you ever tell him that there were

19 prior complaints in your response?

20     MS. THOMPSON:  I didn't get involved in this case

21 until later.

22     THE COURT:  Wait a minute, now.  Who do you

23 represent?

24     MS. THOMPSON:  I'm from the law firm of Dykema.  I

29

1 represent IPRA.

2    THE COURT:  How long have you been representing

3 IPRA?

4    MS. THOMPSON:  Since we received the June 4th

5 subpoena.

6    THE COURT:  How long has your law firm been

7 representing IPRA prior to this subpoena?

8    MS. THOMPSON:  Another attorney in my office -- I

9 took over because an attorney had to leave that day

10 because he was having a baby.  But the other attorney in

11 my office has been representing IPRA for a number of

12 years.

13    MR. GRANICH:  Judge, this attorney right here

14 represented that officer right there in a deposition

15 years ago.

16    THE COURT:  Who is that officer?

17    MR. GRANICH:  Officer Kelly.  She's represented

18 this guy before.  She had his records before.

19    THE COURT:  Okay.  Sit down.

20    MS. THOMPSON:  Our office represents the City and

21 officers in civil and federal lawsuits.  I did --

22 actually, I did when we received the June 4th subpoena,

23 I had some of the documents that were responsive and I

24 gave them to Mr. Granich when I appeared in court on

30

1 June 11th.  I had them in my office, I gave them to him.

2 The rest of them we had to collect.

3              Then we produced them on June 6th on that

4 CD.  As you can see, we needed more time than a week

5 because it's thousands of documents.  We fully complied

6 with the June 4th subpoena which asked for all

7 complaints.  Neither the December 2013 or the March 2014

8 subpoenas asked for all complaints.  They specifically

9 asked regarding this case, which we produced.  There is

10 no order or subpoena we haven't complied with.

11     THE COURT:  Thank you.  What's your response?

12     MR. GRANICH:  Judge, think about what this lawyer

13 just told you.  We give a complaint history when someone

14 asks for information about a specific log number, which

15 I did in 2013.  But they don't give the complaint

16 history if the investigation is still open -- explain

17 that to me.  I can't understand that.

18              So the investigation is still open, so we

19 don't tell you about this guy.  Oh, and by the way, we

20 don't even talk to him for two years, knowing that the

21 case will probably be over before we ever have to

22 produce any of this information.

23              Are you going to allow that?  Are you

24 going to allow this absolute intentional subterfuge of

31

1 the discovery rules?  We give it to you, but not while

2 it's open so we never close it, so we never give it to

3 you.  A cop is accused of tasing a pregnant woman and we

4 never even talk to him in two years.

5          There were four relevant people in this

6 incident from August 2013, two of whom, my client and

7 her husband, gave statements -- let me think -- August

8 2013, three days after the incident.  Since August 2013

9 what effort did IPRA make to call Kelly, who is being

10 paid by the same city they are being paid by?  None.

11 None.  Did they call on the phone?  No. Send in a

12 to/from letter request?  No.

13          Two years I asked chief legal counsel to

14 explain this to me.  "I have no explanation."  That's my

15 response to what they just said.

16          Now, let's go to the subpoena.  Judge, in

17 every state's attorney's file when they do a criminal

18 case and they look at witnesses, they investigate.

19 Every criminal defense lawyer that handles a case that

20 has witnesses investigates the witnesses, runs rap

21 sheets, asks the state's attorneys for rap sheets.

22          No lawyer in their right mind who is

23 competent who is doing an investigation will not get the

24 criminal history or investigate the people involved in

32

1 the case.  What is IPRA's sole reason for being?  They

2 investigate officers when complaints are made against

3 them.  That's all they do.  They don't defend people.

4 They don't prosecute people.  Their only reason for

5 existence is to investigate officers.

6          So when I sent them a request for all

7 documents, notes, records, statements your office has

8 created or obtained -- I didn't just ask them for

9 everything they created on this case.  I asked them for

10 everything they ever obtained about this officer; and

11 they had it -- thousands of pages of it.  And they're

12 going to stand here in front of you with their paid

13 lawyer and say, "Oh, well, he didn't ask for all the

14 previous complaints."  How would I know they exist if I

15 don't know they exist?  You can only get what's in my

16 pocket, Judge, if you ask specifically for it.  But you

17 don't know what's in my pocket.

18          This is the game they're playing in front

19 of you.  This is the game they're playing in Federal

20 Court, and this is the game -- and Judge, I apologize

21 for my loud and passionate speech.  But I have been lied

22 to for two years.  I have had this game played on me for

23 two years and I'm little frustrated.

24     THE COURT:  Sit down, sir.

33

1    MR. GRANICH:  Thank you.

2    THE COURT:  You're going to be frustrated a little

3 bit longer, because this is what we're going to do to be

4 fair to both sides.

5             I want a copy of everything in the federal

6 lawsuit.  I want to see all the motions, the pleadings.

7 Number one, I don't want to duplicate a request that's

8 already before another judge, especially in a federal

9 form.  I don't know what the issues are, I don't know.

10 I understand your position is you may not be the same,

11 but I want to see what's going on with the federal case.

12 What you're asking for may be the same relief that

13 they're asking for over there, I don't know.  I have to

14 take his word for it --

15    MS. THOMPSON:  It's a completely separate issue.

16 Here, the issue is whether we responded to this subpoena

17 and --

18    THE COURT:  But it's a little bit more than that.

19 He's basically saying there is a pattern.  I need to see

20 a little bit more than what's in front of me to see if I

21 can get a better understanding.  Because my experience

22 has been from IPRA -- even practicing as a trial

23 attorney, that when you make a request for IPRA

24 documents, they don't just give you what's in the

34

1 specific case, they give you all the history. I've

2 always gotten all the history, every complaint that's

3 ever been filed. I've never seen limited release. So

4 that's --

5     MS. THOMPSON: Your Honor --

6     THE COURT: Maybe I asked for that, I don't know.

7 It was years ago, and I'm not getting any younger. But

8 I do want to be fair to both sides. So let me look more

9 thoroughly because I just thought this was a routine

10 motion, and now I'm learning that it's much more serious

11 than that. And I want to give everybody proper

12 consideration.

13         So counsel -- both sides can submit

14 further documentation. I want to see what's happening

15 in the federal case, that's primary. And anything else?

16 Anything else you want to present? I want to see case

17 law. Sir, your case law -- and your case law.

18     MS. THOMPSON: I just wanted to add that Mr.

19 Granich said that the request asked for all documents

20 regarding Officer Kelly and it's clearly not what's in

21 the rider. It says regarding this incident.

22         Also, all prior complaints against

23 officers don't become a part of every future complaint

24 that's filed. We don't incorporate all his prior

35

1 complaints.  So when it's asking for the file on this

2 incident we produce this incident.

3    THE COURT:  And your experience has been that you

4 have never -- when a request made or obtained does not

5 mean -- you just said earlier that when you talk to the

6 officer, then you start getting other documents, other

7 complaints that may have been filed; is that correct?

8    MS. THOMPSON:  If a complaint history is run, that

9 is part of the file.  It wasn't run yet in this case.

10    THE COURT:  Only because you never talked to him.

11 Had you talked to him, you would have run it.  Right?

12    MS. THOMPSON:  I don't know that that would be the

13 case.

14    MR. GRANICH:  Judge, I would like perhaps specific

15 questions --

16    THE COURT:  I'd like to see the -- I'm going to

17 take this under advisement.  Before I render any

18 decisions in this case I want to look at the federal

19 case.  I want to see what's happening in the federal

20 case so I can get a better feel for what's going on.

21    MR. GRANICH:  Judge, I would ask perhaps in a sense

22 for a specific interrogatory question to be answered,

23 put to your Honor.  And that would be, in a sense, two

24 questions:  When was the complaint history of Officer

36

1 Kelly run on this complaint.

2           And number two, is an investigator from

3 IPRA or a lawyer from IPRA going to come before you and

4 say that they never when they were investigating this

5 case, they never ran -- they never knew he had a

6 history.

7     THE COURT:  Let me be very clear.  It is not the

8 function of a misdemeanor jury call to go to the extreme

9 that you're trying to take it.  I'm going to stay in my

10 lane.

11     MR. GRANICH:  Fair enough.

12     THE COURT:  Okay.  So how much time do you need to

13 get that case to me, to get your documents and any case

14 law?  We'll come back --

15     MR. GRANICH:  Seven days, Judge?

16     THE COURT:  All right.  Seven days, and you want to

17 come back in three weeks?

18     MS. THOMPSON:  So seven days for the case law?

19     THE COURT:  Yes.  Give me your case law, and I need

20 to see the case -- whoever wants to give it to me.  The

21 movant, I'm asking you to get all the documents from

22 the -- because I want to see what's going on in the

23 federal case.

24     MR. GRANICH:  Judge, what I can also recommend, I

37

1 don't know if your Honor has --

2     THE COURT:  I need that within seven days.  You're

3 going to bring that to me within seven days, and we'll

4 come back here in 21 days and I'll see where we are.

5 Come back on July --

6     MR. GRANICH:  How's July 22nd?

7     THE COURT:  Is that date okay?

8     MS. THOMPSON:  That's fine.

9     THE COURT:  7/22, all right.

10     MR. GRANICH:  I apologize, Judge, one final issue.

11     THE COURT:  You did say three.  Just one second.

12 Are we going to scratch 8/10 and come back on -- why

13 don't we just come back 8/10 on everything?

14     MS. THOMPSON:  I'm not in town on 8/10.

15     MR. GRANICH:  We can keep it separated.  We'll deal

16 with IPRA on --

17     THE COURT:  No, we can't keep it like that.  I only

18 have two sheets.

19     MR. GRANICH:  Perhaps the State would be ready by

20 July 22nd then?  You gave them until August 10th.

21     MS. THOMPSON:  I actually have a hearing in Will

22 County on the 22nd.  I can send someone else from my

23 office here.

24     THE COURT:  I'll tell you what -- I don't want to

38

1 put two dates in the system.  I'll strike this date for

2 the argument and we will come back on 7/22.

3     MS. THOMPSON:  I'm not available but I can have

4 someone else to come.

5     THE COURT:  Okay.  So I'm going to strike 8/10 for

6 the argument on the Lynch motion.  It will be 7/22 on

7 the motion for sanctions.

8     MR. GRANICH:  Judge, will we be ready to deal with

9 the Lynch issue on the 22nd?

10     THE COURT:  I don't know.  I'm striking that right

11 now.

12     MR. GRANICH:  I'll be ready on the 22nd.

13     THE COURT:  State, will you be ready on the 22nd?

14 I gave you a schedule, I gave you a briefing schedule.

15     MR. NEAL:  I would anticipate being ready.

16     THE COURT:  Okay.  So we will have argument --

17 argument on Lynch motion and sanctions.  I don't know if

18 I will have a decision at that time.

19     MR. GRANICH:  No problem.

20     THE COURT:  You said it's 3,000 pages?

21     MS. THOMPSON:  We've summarized it for you, Judge.

22     THE COURT:  Yeah, right.  7/22/15 on both

23 defendants.  What is your third issue?

24     MR. GRANICH:  Judge, the third issue involves the

39

1 State's Attorney's Office.  During the two years this

2 case has been pending, it is my contention that the

3 State should have known or knew about Officer Kelly's

4 rather checkered past, including these two arrests,

5 including the suspension, including 22 excessive force

6 complaints made against him.

7              I'm arguing Judge, that this is Brady

8 material that goes to credibility, that goes to my

9 defense, that was deliberately withheld from me.

10     THE COURT:  Did you make a request?

11     MR. GRANICH:  I made an oral motion for discovery

12 more than a year and a half ago.

13     THE COURT:  An oral motion for discovery means

14 what?  In a misdemeanor case, what discovery are you

15 entitled to, sir?

16     MR. GRANICH:  Everything they have that's Brady

17 material, and I believe they knew.  By the way --

18     THE COURT:  You are asking for sanctions.  You

19 can't -- you laid out a case, a prima facie case, that

20 counsel should have known.  Why should they have known,

21 State?

22     MR. GRANICH:  Judge, I cannot believe --

23     THE COURT:  It's my understanding all you're

24 entitled to is a bill of particulars.  You are entitled

40

1 to discovery, and you filed a subpoena.

2     MR. GRANICH:  If the state's attorney wants to

3 imply right here before you they had no knowledge --

4     THE COURT:  I don't want to put that onus on them

5 to have to defend something that -- I think had they

6 known -- they're honorable.  Had they known, they would

7 have given it to you.

8     MR. GRANICH:  I agree, Judge.  By the way, I made

9 this argument --

10     THE COURT:  I'm not saying IPRA is not honorable,

11 but they are in here every day and I don't think it's

12 the burden on the State.

13     MS. THOMPSON:  Judge, my feeling is this.  There

14 are two possibilities.

15     THE COURT:  Plus, these state's attorneys weren't

16 even here.

17     MR. GRANICH:  True.  But they are simply agents of

18 the office.  And the office --

19     THE COURT:  And you served the appropriate office,

20 not the attorneys in here.

21     MR. GRANICH:  The State's Attorney's Office has

22 been representing this case for two years.  If the

23 state's attorney does not know that a Chicago police

24 officer has been arrested by the Chicago Police twice;

41

1  does not know that a Chicago police officer has been

2  sanctioned because of attacking another Chicago police

3  officer; and doesn't disclose that material, it's a

4  Brady violation, pure and simple.

5              Additionally, Judge, in April all of this

6  material came to light with the state's attorneys.

7       THE COURT:  Put your motion in writing.

8       MR. GRANICH:  I did, Judge, and it's actually

9  before you right now.

10      THE COURT:  Where is it?  When did you file it?

11  Today?  15 minutes ago?

12      MR. GRANICH:  About -- Judge, there was one thing I

13  want to add.

14      THE COURT:  Oh, here it is.  Motion for sanctions

15  against the Cook County State's Attorney's Office for

16  failure to disclose Brady material.  Now, you're going

17  to argue it -- you're accusing them -- you're doing the

18  same thing to them.

19      MR. GRANICH:  Judge, I'm just filing --

20      THE COURT:  It's called trial by ambush.

21      MR. GRANICH:  No, Judge.  They're certainly welcome

22  to file a response and I will file a reply.

23      THE COURT:  Oh.  They have your permission to

24  reply, huh?

                                42

1     MR. GRANICH:  Judge, I'll sit down.

2     THE COURT:  Please.  How much time do you need to

3 respond?  Can you respond by the 22nd?

4     MR. NEAL:  Judge, we should be able to respond by

5 the 22nd.

6     THE COURT:  Okay.  All motions will be heard on the

7 22nd.  Anything else?

8     MR. GRANICH:  Judge, I would just like to make

9 sure.  The last several weeks I have been informed by

10 counsel for IPRA and I have been informed by the City

11 that IPRA did not have access to Internal Affairs

12 files --

13     THE COURT:  Say that -- I'm sorry.

14     MR. GRANICH:  The last several weeks based on my

15 subpoenas that were pending before this Court, I have

16 been informed by counsel for IPRA and the City that IPRA

17 does not have access to Internal Affairs complaints made

18 against Officer Kelly.  They made that argument before

19 the Judge that was sitting here on the last court date,

20 and she ordered them to produce everything.

21         I don't know at this point, nor do I trust

22 that I have in fact been given everything by IPRA.  So I

23 would ask that -- because I don't want to be told again

24 that I didn't ask for it.  So I'm making a very clear

43

1 request before your Honor that IPRA be ordered to give

2 me everything that exists against this officer that has

3 been generated by the City, whether that's Internal

4 Affairs, the bureau of Legal Affairs, the Chicago Police

5 Department, his personnel file -- everything. I don't

6 want --

7     THE COURT:  Counsel, what's your response?

8     MS. THOMPSON:  Your Honor, the order was to produce

9 the complaint files of IPRA or BIA or IAD, which we

10 produced.  We are not going to run his personnel file

11 and we weren't ordered to produce the personnel file --

12     THE COURT:  Are you asking for the personnel file?

13     MR. GRANICH:  Judge, I think there may be more

14 complaints that I don't know about.  They have already

15 done it.

16     THE COURT:  Put your request in writing.

17     MS. THOMPSON:  Your Honor, I'd just like to add

18 that IPRA doesn't pull personnel files.  CPD has all

19 that.

20     THE COURT:  Then that will be your response.  Put

21 your request, your further request in writing.  I think

22 they have responded with everything that you requested

23 originally.  Now you're going beyond that; is that

24 correct?

44

1     MR. GRANICH:  Judge, I don't believe that they've

2 given me everything.  I don't.

3     THE COURT:  But you may not be entitled to

4 everything, so quantify your request.

5     MR. GRANICH:  All right.

6                         (The above-entitled cause was

7                          continued to July 22, 2015.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

45

```
 1  STATE OF ILLINOIS    )
                          ) SS
 2  COUNTY OF C O O K     )

 3

 4          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - FIRST MUNICIPAL DIVISION
 5

 6              I, EDITH M. SMITH, an Official Court

 7  Reporter of the Circuit Court of Cook County, County

 8  Department-First Municipal Division, do hereby certify

 9  that I reported in shorthand the proceedings had in the

10  above-entitled cause; that I thereafter caused the

11  foregoing to be transcribed into typewriting, which I

12  hereby certify to be a true and accurate transcript of

13  the proceedings had before the Honorable CLARENCE L.

14  BURCH, Judge of said court.

15

16

17

            EDITH M. SMITH
18          Official Court Reporter
            CSR No. 084-003976
19

20

21  Dated this 30th

22  day of September, 2015.

23

24

                            46
```