# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ELAINA TURNER and<br>ULYSSES GREEN, | ) )<br>) | Case No. 15 CV 6741 |
| Plaintiffs, | )<br>)<br>) | JUDGE SHARON J. COLEMAN |
| vs. | )<br>) | Magistrate Judge Susan Cox |
| CITY OF CHICAGO, ILLINOIS, and<br>CHICAGO POLICE OFFICERS<br>Patrick KELLY, Star No. 19397,<br>Jeffrey WEBER, Star No. 13854 and<br>James KUBIK, Star No. 1397 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## DEFENDANT CITY'S ANSWER TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CITY OF CHICAGO

Defendant, CITY OF CHICAGO ("City"), by its attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, for its answer to Plaintiff's First Set of Interrogatories to Defendant CITY OF CHICAGO, states as follows:

1.    State the name, job title, address, and phone number of every person who participated in answering these Interrogatories and accompanying discovery requests, indicating which particular interrogatory answer and discovery requests were answered by which person.

**ANSWER**:    The City objects to this interrogatory as vague and ambiguous, overbroad, and unduly burdensome. Subject to and without waiving these objections, the City states that answers to these interrogatories and responses to plaintiffs' request for the production of documents were prepared by the City's counsel of record with the assistance of the Office of Legal Affairs of the Chicago Police Department, 3510 South Michigan Avenue, Chicago, Illinois (312/745-6115), including but not limited to Sgt. Eric Winstrom; other units of the Chicago Police Department;

and, other departments of the City of Chicago, including the Independent Police Review Authority.

2.    Please identify by name and address all persons who have knowledge of facts that relate to any of the claims or defenses in this action. If you answer this Interrogatory by incorporating Documents, please indicate whether there are any additional persons with knowledge responsive to this Interrogatory who are NOT listed in the documents to which you refer.

**ANSWER:**    The City objects to this interrogatory as unduly burdensome, calling for a long, narrative answer better suited to an oral deposition, to the extent it requests information outside of the scope of the City's knowledge, more properly directed to the Defendant Officers, and requesting personal information of law enforcement officers, the disclosure of which presents a safety and privacy concern for the officers and their families. Subject to and without waiving these objections, the City refers Plaintiffs to the persons listed in Defendants' Rule 26(a)(1) disclosures and any supplements to those disclosures. Answering further, the City refers Plaintiffs to the Area File (FCRL 000001-000018), the Plaintiffs' arrest reports (FCRL 000019-000023, 000036-000040), the impound documents (FCRL 000054-000055), the officer battery report (FCRL 000066-000067), the tactical response report (FCRL 000105-000106), the Chicago Fire Department Run Sheet (FCRL 000822-000824), and the original case incident report and supplemental reports (FCRL 000842-000852).

3.    Please state whether there have been any complaints of misconduct in the past ten (10) years made against any of the Defendant Officers in this case or responding police officers (including any complaints which presently remain pending) which are not listed on the disciplinary print-outs produced in this litigation, including but not limited to any and all Internal Affairs Complaints, Independent Police Review Authority Complaints ("IPRA"), and any and all Complaints lodged to any reviewing authority of the CITY against the Defendant Officers alleging excessive force, wrongful arrest, or denial of medical care. For all Complaints responsive to this Interrogatory, please provide the CR number or other identifying information.

**ANSWER:**    The City objects to this interrogatory as irrelevant, vague, unduly burdensome, overly broad in scope and time, and to the extent it may implicate the law enforcement

investigatory privilege. Subject to and without waiving these objections, the City refers Plaintiffs to the CRMS histories of the Defendant Officers, Bates-stamped as FCRL 000828-000829.

4.      For each such complaint listed in Interrogatory 3, briefly describe the nature of the complaint and state the name, address, and phone number of the complainant and/or attorney representative of the complainant.

**ANSWER**:   The City objects to this interrogatory as irrelevant, vague, unduly burdensome, overly broad in scope and time, and to the extent it may implicate the law enforcement investigatory privilege. Subject to and without waiving these objections, the City refers Plaintiffs to the Defendant Officers' CRMS histories, Bates-stamped as FCRL 000828-000829, and further refers Plaintiff to the complaint register files produced by Plaintiff, Bates-stamped as IPRA 000001-002957.

5.      Please state each and every lead investigator assigned to investigating the allegations made by Plaintiff Elaina Turner against Defendant Chicago Police Patrick Kelly under LOG #1063990, regarding the incident-giving rise to this complaint. For each such investigator please state the beginning and ending dates of their assignment, the agency or department for which he/she worked, and the duties and responsibilities they maintained as lead investigator.

**ANSWER**:   The City objects to this interrogatory as vague as to "lead investigator" and "duties and responsibilities" and calling for a long, narrative answer better suited to an oral deposition. The City further objects to the extent that information related to the duties and responsibilities of a lead investigator is more properly elicited via a properly noticed Rule 30(b)(6) deposition. Subject to and without waiving these objections, the City states that from approximately August 6, 2013 to approximately May 26, 2015 the lead investigator was Richard Delaney and from approximately May 26, 2015 to the present the lead investigator is Tammy Clark. Answering further, Mr. Delaney and Ms. Clark were both working as Investigator II

3

investigators for the Independent Police Review Authority and were assigned as the primary investigators (at different times) whose responsibility it was to investigate the case.

6.     From August 9, 2013 through January 7, 2015, please state any and all investigation processes that took place in reviewing the allegation made under LOG #1063990 by the Independent Police Review Authority.

**ANSWER**:     The City objects to this interrogatory as vague as to "investigation processes" and calling for a long, narrative answer better suited to an oral deposition. Subject to and without waiving these objections, the City refers Plaintiffs to the contents Log No. 1063990, a portion of which was previously produced by Plaintiff (Bates-stamped as IPRA 002104-002181 and including various attachments).

7.     Please state the reason that Officer Kelly or Officer Weber were not interviewed or contacted by the Independent Police Review Authority regarding the allegation of complaint LOG #: 1063990 until August 17, 2015 - over two years after the initial allegations were made by Plaintiff Turner and Green?

**ANSWER**:     The City objects to this interrogatory as argumentative and calling for a long, narrative answer better suited to an oral deposition. Subject to and without waiving these objections, the City states that Officers Kelly and Weber were interviewed as soon as sufficient evidence was collected in order to properly conduct the interviews.

8.     For all such reasons set forth in Interrogatory No. 7, please state the person that was responsible for making that decision and whether that decision conflicted with any policy, practice or customs of IPRA or the City of Chicago.

**ANSWER**:     The City objects to this interrogatory as argumentative, calling for a long, narrative answer better suited to an oral deposition, and vague as to "making that decision" and "policy, practice, or customs." The City further objects to the extent that information related to policies is more properly elicited via a properly noticed 30(b)(6) deposition. Subject to and without waiving these objections, the City states that Supervisor Mark Hitt determined that more information was needed before conducting the interviews of the officers.

9.   Please state whether the Independent Police Review Authority creates or obtains as a matter of policy, practice or custom any CR history or complaint history of the Chicago Police Officers for which an allegation of police misconduct is charged against? If yes, please state the CR history obtained and whether the policy, practice or custom is written down or simply taught and prevalent among IPRA investigators.

**ANSWER:**   The City objects to this interrogatory as vague and ambiguous as to "creates or obtains," "policy, practice or custom," and "any CR history or complaint history." The City further objects to this interrogatory as it is better suited to a properly noticed Rule 30(b)(6) deposition. Subject to and without waiving these objections, the City states that IPRA has access to Crystal Reports, which document complaints against officers over a seven year time-frame.

10.   Please state whether any Criminal History report of Officer Kelly or Officer Weber were created or obtained by an investigator for IPRA as part of the investigation of the complaint made by Plaintiff Elaina Turner under LOG # 1063990, prior to December 9, 2013? If answered in the affirmative, please state the person who created or obtained the CR report and the type of report created or obtained (i.e 7 year Crystal Report, CRMS 10 year report, etc.)

**ANSWER:**   The City objects to this interrogatory as vague as to "criminal history report." Subject to and without waiving these objections, the City refers Plaintiff to the contents of Log No. 1063990, a portion of which was already produced by Plaintiff. If any further contents exist, the City will produce the additional materials subject to entry of an appropriate protective order. Answering further, the City states that a Crystal report for Officer Kelly was printed by Supervisor Hitt on August 7, 2015. Answering further, no Crystal report was printed for Officer Webber because he was not named as an accused in Log No. 1063990.

10 [sic]. Please state whether any Criminal History report of Officer Kelly or Officer Weber were created or obtained by an investigator for IPRA as part of the investigation of the complaint made by Plaintiff Elaina Turner under LOG # 1063990, prior to March 19, 2015? If answered in the affirmative, please state the person who created or obtained the CR report that type of report that was created or obtained. (i.e 7 year Crystal Report, CRMS 10 year report, etc.)

**ANSWER:**   The City objects to this interrogatory as argumentative, cumulative, and vague as to "criminal history report."  Subject to and without waiving these objections, the City refers

Plaintiff to Log No. 1063990, to be produced subject to entry of an appropriate protective order, and states that a Crystal report for Officer Kelly was printed by Supervisor Hitt on August 7, 2015. Answering further, no Crystal report was printed for Officer Webber because he was not named as an accused in Log No. 1063990.

11.     Please state whether the Independent Police Review Authority ever contacted the tow truck driver, Donald A. Leitmeyer, who was on scene and witnessed the Tasing of Plaintiff Elaina Turner on August 2, 2013, as part of its investigation of the Plaintiff Elaina Turner's allegations under LOG # 1063990? If answered in the affirmative, please state the date of the contact and the name of the IPRA or City of Chicago employee that made the contact.

**ANSWER:**     The City objects to this interrogatory as more properly suited to an oral

deposition. Subject to and without waiving this objection, the City states that Donald A.

Leitmeyer has not been contacted to date.

12.     Please state whether the IPRA has concluded its investigation of the incident-giving rise to the complaint on August 2, 2013? If answered in the affirmative please state the following:

> (a)     The date the investigation was concluded;
> (b)     The outcome of the investigation (including any specific findings)
> (c)     The person(s) who reviewed and signed off on the conclusion; and
> (d)     Any and all discipline recommendation as to the Defendant Officers.

**ANSWER:**     The City objects to this interrogatory as vague as to "concluded" and

"investigation." Subject to and without waiving these objections, the City states that the

investigation of Log No. 1063990 is in its final stages and the City will supplement its answer to

this interrogatory when Log No. 1063990 is closed.

13.     Please state whether the criminal trial transcript of Elaina Turner and Ulysses Green were reviewed as part of the investigation of LOG # 1063990?

**ANSWER:**     The City objects to this interrogatory as better suited to an oral deposition.

Subject to and without waiving this objection, the City states that the criminal trial transcripts of

6

Elaina Turner and Ulysses Green have not been reviewed as part of the investigation of Log No. 1063990.

14.     Please state whether Defendant Officer Patrick Kelly is still assigned to street duty as a Chicago Police Officer as of the present date, January 25, 2016. If not, please state the date that Officer Patrick Kelly was removed from active street duty and reason(s) thereof.

**ANSWER:**     The City objects to this interrogatory as argumentative, lacking a relevant time-frame, and vague as to "assigned to the street." Subject to and without waiving these objections, the City states that City records indicate that Officer Kelly was assigned to the 9th District, Beat 935, on January 25, 2016.

15.     Please state whether Defendant Officer Patrick Kelly is authorized to carry a Taser while on duty as a Chicago Police Officer as of the present date, January 25, 2016?

**ANSWER:**     The City objects to this interrogatory as lacking a relevant time-frame. Subject to and without waiving these objections, the City states that City records indicate that Officer Kelly was authorized to carry a taser while on duty on January 25, 2016.

16.     Please identify each and every CR complaint made against Officer Patrick Kelly that resulted in discipline or a finding of misconduct against him. For each such complaint, please describe the discipline imposed and the rule or regulation that Officer Kelly was determined to have violated.

**ANSWER:**     The City objects to this interrogatory as unduly burdensome, lacking an adequately defined time-frame, and vague and ambiguous as to "resulted in discipline." Subject to and without waiving these objections, the City refers Plaintiffs to Officer Kelly's CRMS history, Bates-stamped as FCRL 000828, and further refers Plaintiffs to the complaint register file produced by Plaintiff, including the documents Bates-stamped as IPRA 000263-000348 and 001365-002102.

17.     Please state whether the Defendant CITY OF CHICAGO contends that Defendant Officer Patrick Kelly exhibits the professionalism and character to patrol the streets of Chicago as a Chicago Police Officer as of January 25, 2015.

7

**ANSWER**: The City objects to this interrogatory as argumentative, vague and ambiguous, and lacking an adequately defined and relevant time-frame.

18.     Please state whether the Defendant CITY OF CHICAGO contends that Chicago Police Officer Patrick Kelly was justified in Tasing Plaintiff Elaina Turner on August 2, 2013?

**ANSWER**: The City objects to this interrogatory as argumentative, vague as to "justified," calling for a long, narrative answer better suited to an oral deposition, and premature as Log No. 1063990 has not been finalized and closed.

19.     Please state whether the Defendant CITY OF CHICAGO contends that Chicago Police Officer Patrick Kelly was justified in dry stunning Plaintiff Elaina Turner in the belly on August 2, 2013?

**ANSWER**: The City objects to this interrogatory as argumentative, vague as to "justified," calling for a long, narrative answer better suited to an oral deposition, and premature as Log No. 1063990 has not been finalized and closed.

20.     Please state any and all reasons why the City of Chicago non-suited the case City of Chicago v. Ulysses Green, Docket No. 13 VP 012192, brought at the Department of Administrative Hearings.

**ANSWER**: The City objects to this interrogatory as irrelevant and to the extent it calls for information protected by the attorney-client privilege and/or work-product doctrine.

21.     Please list by Court and Case Caption each and every lawsuit that has been filed for which has named Defendant Officer Patrick Kelly, in his official capacity as a Chicago Police Officer, as a defendant.

**ANSWER**: The City objects to this interrogatory as overly broad, unduly burdensome, more properly directed to Officer Kelly, to the extent it calls for information that may be outside of the City's knowledge, and calling for information equally available to Plaintiff. Subject to and without waiving these objections, the City states, upon information and belief, that, aside from the present lawsuit, Officer Kelly has been named in the following lawsuits:

a.     *Wilson v. Kelly, et al.*, 08 CV 4103, Northern District of Illinois

8

b.   *Martinez, et al. v. City of Chicago, et al.*, 09 CV 5938, Northern District of Illinois

c.   *Rios v. City of Chicago, et al.*, 08 CV 4272, Northern District of Illinois

d.   *LaPorta v. City of Chicago, et al.*, 14 CV 9665, Northern District of Illinois, removed from Circuit Court of Cook County

22.   For each such case identified in Interrogatory No. 21, please state the following:

(a)   The outcome of the case (if not still pending)
(b)   If case settled, state the amount of the settlement regardless if the City denied liability in the settlement; and
(c)   The date of the outcome or settlement.

**ANSWER:**   The City objects to this interrogatory as overly broad, unduly burdensome, more properly directed to Officer Kelly, and calling for information equally available to Plaintiff.

23.   In the last ten (10) years, please state the number of Chicago Police Officers that have been disciplined for unjustified Tasing of a civilian. For each such officer state the name and discipline imposed.

**ANSWER:**   The City objects to this interrogatory as unduly burdensome, having an overly broad time-frame, and vague as to "discipline imposed." The City further objects to this interrogatory as to relevancy and proportionality based upon the City's pending Motion to Bifurcate. Subject to and without waiving these objections, the City agrees to seasonably supplement its answer to this interrogatory subject to the Court's ruling on its Motion to Bifurcate.

Respectfully submitted,

/s/*Marion C. Moore*
MARION C. MOORE
Assistant Corporation Counsel

30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-1056 (P)
(312) 744-6566 (F)

9

## CERTIFICATE OF SERVICE

I hereby certify that I have served this notice and the attached document **Defendant City's Answer to Plaintiff's First Set of Interrogatories to Defendant City of Chicago** by causing it to be delivered by U.S. Mail Postage Prepaid to the following: LAW OFFICE OF JEFFREY B. GRANICH, Jeffrey B. Granich, 53 W. Jackson, Suite 1028, Chicago, IL 60604, and to all counsel of record via email, on this 8th day of April 2016.

/s/*Marion C. Moore*
MARION MOORE
Assistant Corporation Counsel

10

CERTIFICATION

Pursuant to 28 U.S.C. § 1746, the undersigned, Eric Winstrom, assigned to the Office of Legal Affairs, Chicago Police Department, certifies that he signed Nos. 1-4, 14-17, and 21-22 of the foregoing Defendant City of Chicago's Answers to Plaintiff's First Set of Interrogatories, with the following clarification to Interrogatory No. 16: that there was a preliminary sustained finding as to two of the allegations in Log No. 308519, but those findings were overridden to result in a final finding of Not Sustained because the evidence was not enough to prove or disprove the allegations; and that this is reflected in Log No. 308519, Bates-stamped as IPRA 000263-000348. The undersigned further certifies that that he is duly authorized to provide such certification within his corporate capacity; that certain of the matters stated in the foregoing response are not within his personal knowledge and belief, there is no employee of the City of Chicago who has personal knowledge of all such matters and that the statements set forth in the foregoing Answers to Nos. 1-4, 14-17, and 21-22 to Plaintiff's First Set of Interrogatories are based on documents and information which has been assembled by authorized employees and counsel of the City of Chicago, and that he is informed and believe that the statements set forth in the foregoing responses are true and accurate to the best of his knowledge, information and belief.

ERIC WINSTROM
Chicago Police Department
Office of Legal Affairs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELAINA TURNER and<br>ULYSSES GREEN, | ) | |
| | ) | Case No. 15 CV 6741 |
| Plaintiffs, | ) | |
| | ) | JUDGE SHARON J. COLEMAN |
| vs. | ) | |
| | ) | Magistrate Judge Susan Cox |
| CITY OF CHICAGO, ILLINOIS, and | ) | |
| CHICAGO POLICE OFFICERS | ) | |
| Patrick KELLY, Star No. 19397, | ) | |
| Jeffrey WEBER, Star No. 13854 and | ) | |
| James KUBIK, Star No. 1397 | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT CITY OF CHICAGO

Defendant, CITY OF CHICAGO ("the City"), by and through its attorney MARION MOORE, Assistant Corporation Counsel for the City of Chicago, for her answer to Plaintiff's First Request for Production of Documents to Defendant CITY OF CHICAGO, states as follows:

1.      All documents relating to any internal investigation (e.g. O.P.S., Internal Affairs, Independent Police Review Authority) of the incident described in Plaintiff's complaint, including but not limited to all attachments and investigator notes regardless of whether those notes are incorporated into subsequent documents, all color photographs taken of Plaintiff or Defendants, all audio or video statements taken of Plaintiff or Defendants or witnesses regarding the incident.

**RESPONSE**:  The City objects to this request to the extent it calls for documents already in Plaintiffs' possession.  Subject to and without waiving this objection, the City states that Log No. 1063990 is now in Command Channel Review and remains open.  Once Log No. 1063990 is closed, the City will produce the contents of Log No. 1063990 (which have been bates-stamped FCRL208-572) currently in its possession along with any updated attachments and documents

upon entry of a protective order that governs the use and dissemination of these materials.

*Investigation continues.*

2.      All documents relating to Defendant Officers' participation in any of the following Departmental programs in the past 10 years: Behavioral Intervention System, Personal Concerns Program, or any other disciplinary or rehabilitative program.

**RESPONSE**: The City objects to this request as overbroad in terms of time frame and scope, harassing, unduly burdensome and not proportional to the needs, issues, and defined subject matter of the case as Plaintiffs *Monell* claim is limited to deficient internal disciplinary investigations involving allegations of the unlawful use of tasers and/or arrests without probable cause.  The Department's Behavioral Intervention System ("BIS") and Personal Concerns Programs ("PCP") are not disciplinary processes nor are they mechanisms to initiate discipline. Therefore, the Defendant Officers' participation, if any, in either program is neither material nor relevant to any issue in this lawsuit or the subject matter of Plaintiffs *Monell* claim. Moreover, the Department's BIS and PCP is neither material, nor relevant, to assessing or evaluating the integrity and effectiveness of IPRA in dealing with allegations of police misconduct. Responding further, the City objects to this request as calling for documents protected against disclosure under the physician-patient privilege.

3.      All documents relevant to Defendant Officers' whereabouts on the date(s) alleged in Plaintiffs complaint, including but not limited to, Attendance & Assignment Sheets, police reports, ticket books, and log sheets.

**RESPONSE**:  The City objects to this request as calling for documents already in Plaintiffs' possession, calling for information better suited for a deposition, vague as to "all documents relevant," overbroad in terms of requesting "ticket books and log sheets," and disproportionate to the needs of the case as the officers' whereabouts on August 2, 2013 is not at issue in this case. Subject to and without waiving these objections, the City refers Plaintiffs to Attendance and Assignment Sheets (FCRL 799-821), Area File HW390385 (FCRL 1-18), Original Case Incident

2

Report HW390385 (FCRL 842-852), Arrest Report-Turner (FCRL 48-52), and the OEMC Event

Queries found in Attachment #17 of Log No. 1063990, which is already in Plaintiffs' possession.

Please note the City agrees to produce the contents of Log No. 1063990 once a protective order

has been entered in this case. If and when the City comes into possession of additional

documents responsive to this request, the City will produce them at that time. *Investigation*

*continues.*

      4.     All documents relevant to Defendant Officers' whereabouts on January 8, 2014, including but not limited to, Attendance & Assignment Sheets, police reports, ticket books, and log sheets.

**RESPONSE**:  The City objects to this request as calling for information better suited for a

deposition, vague as to "all documents relevant," and irrelevant and disproportionate in that it

seeks discovery on the officers' whereabouts of January 8, 2014 when the incident that is the

subject of this lawsuit occurred on August 2, 2013.  Consequently, the officers' whereabouts on

January 8, 2014 has no bearing on the events of August 2, 2013.

      5.     All documents relating to Chicago Police Department General Orders, Directives (including Task Files for the directives), training materials, Department manuals, procedural guidelines or memos, rules, written policies, or practices relating to the following subjects:

        a)     Determination of when probable cause exists to arrest a citizen;
        b)     Arrest and seizure of a suspect;
        c)     When it is justified to use force.

**RESPONSE**:  The City objects to the phrase "relating to" as vague and ambiguous and further

objects to this request as overly broad in terms of time frame and scope.  The request fails to

identify a relevant time period and calls for "all documents," which could encompass a wide

variety of materials created over the entire lifespan of the Chicago Police Department's

existence.  To obtain the colossal amount of information and documentation would be unduly

burdensome.  Moreover, this request is irrelevant and disproportionate to the issues in the case as

3

Plaintiffs are not bringing a "failure-to-train" type *Monell* claim. Subject to and without waiving these objections, the City refers Plaintiff to the Chicago Police Department's online directives, which can be found at www.directives.chicagopolice.org.

6.     All documents relating to the administrative file of Docket No. 13VP012192, including all notes, memorandums, subpoenas, video records, etc.

**RESPONSE:** The City objects to this request to the extent it calls for documents already in Plaintiffs' possession, as evidenced by a transcript of one of the hearings in Plaintiff Turner's underlying criminal proceeding, which took place on March 19, 2015 (FCRL 646-651), indicating that Plaintiffs received these materials from the Department of Administrative Hearings pursuant to a FOIA request. The City further objects to this request as irrelevant to Plaintiffs' *Monell* claim. Subject to and without waiving these objections, the City is not in possession of any documents responsive to this request at this time. If and when the City comes into possession of the administrative file of Docket No. 13VP012192, the City will produce it upon receipt. *Investigation continues.*

7.     The complete disciplinary background of all Defendant Officers including any and all civilian, internal, disciplinary or governmental complaints, investigative files, documents, and all other records on these defendants, including any complaints of misconduct, investigative reports of misconduct, recommendations, findings, determinations, reviews, and any discipline or punishment imposed as to every complaint and investigation.

**RESPONSE:** The City objects to this request: (1) as duplicative and unduly burdensome because Plaintiffs are already in possession of all complaint histories and CR/Log Files of the Defendant Officers Kelly and Weber dating as far back as 2001; (2) as overly broad in scope and time; (3) vague and ambiguous as to what Plaintiffs mean by "recommendations"; (4) calling for documents outside of the City's possession, custody, or control because it seeks "governmental complaints, investigative files, documents and all other records" which could encompass a variety of agencies and divisions of state and federal government; (5) disproportionate to the

4

needs of the case to the extent it seeks documents related to Officer Kubik because Plaintiffs'

complaint contains no allegations relating to Officer Kubik or provides no allegations from

which to infer Officer Kubik's personal involvement in the alleged constitutional deprivations;

and (6) to the extent this request seeks the investigative file of CR/Log No. 301330 as

disproportionate to the needs of the case as this complaint register involved an incident that

occurred in 2004, well outside of the 5-year relevant time frame for Plaintiffs' *Monell* claim.

Subject to and without waiving these objections, the City refers Plaintiffs to Defendant Officers'

CRMS Histories (FCRL 828-829).

     8.    All documentation that set forth the investigation procedures on August 4, 2013, provided by the Independent Police Review Authority to its investigators relating to the investigation of misconduct complaints involving the Tasing of a civilian.

**RESPONSE**: The City objects to the phrase "all documentation" as vague, ambiguous, and

overly broad in terms of scope, and further objects to the request as lacking foundation to the

extent it presupposes or suggests that complaints involving the use of a taser are considered

separate and distinct from complaints involving allegations of excessive force. Subject to and

without waiving these objections, the City refers Plaintiffs to the Independent Police Review

Authority's Investigative Process, which can be found free of charge at

http://www.iprachicago.org/ipra/homepage/process.html, Annual Reports for the years 2008-

2013 that set forth the topics of In-House training provided by IPRA for those years, which can

be found at http://www.iprachicago.org/ipra/homepage/PublicationPress/archived_reports.html,

IPRA Standard Operating Procedures (FCRL 1015-1375), and GO 93-03 (FCRL 929-1014).

     9.    For the last ten (10) years, please produce that complete investigative file for all investigations that resulted in discipline being imposed on a Chicago Police Officer for the unjustified Tasing of a civilian, including all attachments.

**RESPONSE**: The City objects to this request as unduly burdensome, overbroad, and not proportionate to the needs of the case in that it appears to be seeking files of investigations that occurred post-incident and files of investigations dating as far back as 2005. Subject to and without waiving these objections, the City is not in possession of any documents responsive to this request at this time, but will produce the CR/Log File for any investigations that resulted in discipline for the use of a Taser between 2008 and 2013, and subject to the entry of a protective order. Responding further, the City refers Plaintiffs to IPRA's Annual Reports, Quarterly Reports, and Monthly Sustained Case Reports for the years 2008 to 2013, which can be found free of charge at http://www.iprachicago.org/ipra/homepage/PublicationPress.html. *Investigation continues.*

10. For each of the years 2008 through 2013, any and all documents containing information related to the number of police misconduct complaints filed against Chicago police officers alleging that a Chicago Police officer Tased a civilian without justification.

**RESPONSE**: The City objects to this request as vague, unduly burdensome, overbroad, and not proportionate to the needs of the case in that it appears to be seeking not only files of, but any number of unidentified or unspecified documents that may relate in some way to investigations over a five year period, and to the extent this request seeks documents outside the possession, custody, or control of the City. Subject to and without waiving these objections, the City refers Plaintiffs to IPRA's Annual Reports, Quarterly Reports, and Monthly Sustained Case Reports for the years 2008 to 2013, which can be found free of charge at http://www.iprachicago.org/ipra/homepage/PublicationPress.html. *Investigation continues.*

11. Any and all documents relating to implementing an effective early warning system to identify police officers in need of behavioral intervention in the Chicago Police Department.

**RESPONSE**: The City objects to this request as overbroad in terms of scope and time, vague and ambiguous as to the phrase "early warning system" and as to what constitutes "in need of behavioral intervention." Responding further, the City objects to this request as not proportional to the needs, issues, and defined subject matter of the case as Plaintiffs' *Monell* claim is limited to deficient internal disciplinary investigations involving allegations of the unlawful use of tasers and/or arrests without probable cause. The Department's Behavioral Intervention System ("BIS") and Personal Concerns Programs ("PCP") are not disciplinary processes nor are they mechanisms by which to initiate discipline. Therefore, the Department's BIS and PCP is neither material, nor relevant, to assessing or evaluating the integrity and effectiveness of IPRA in dealing with allegations of police misconduct.

      12.    Any and all documents relating to the salaries of and any bonuses received by the Defendant Officers for the years 2010 to the present.

**RESPONSE**: The City objects to this request as irrelevant, harassing, vague as to "relating to the salaries," not proportional to the needs, issues, and defined subject matter of the case as Plaintiffs *Monell* claim focuses on internal disciplinary investigations involving allegations of the unlawful use of tasers and/or arrests without probable cause, and to the extent it calls for information contained in the Defendant Officers' personnel files, which are protected from disclosure by the Illinois Personnel Review Act. For general wage information of CPD members, the City refers Plaintiffs to the CBA between CPD and the Fraternal Order of Police Chicago Lodge No. 7, which is available for download free of charge at http://directives.chicagopolice.org/directives/.

      13.    Any and all documents containing information related to every Chicago Police Department criminal investigation of Defendant Officer Kelly, including any and all arrest reports, supplemental reports, General Progress Reports, original case reports, booking photographs, witness statements, etc.

**RESPONSE**:  The City objects to this request as harassing, irrelevant, not proportional to the needs, issues, and defined subject matter of the case as Plaintiffs *Monell* claim focuses on internal disciplinary investigations involving civilian complaints alleging the unlawful use of tasers and/or arrests without probable cause, to the extent it calls for documents already in Plaintiffs' possession, and calling for the production of law enforcement records relating to Officer Kelly's June 2006 (FCRL 574-587) and January 2010 (part of Log No. 1033096) arrests that have now been expunged and, therefore, protected against disclosure.  The City will not produce these materials until the entry of a protective order, which governs the use and dissemination of these materials.

14.    All documents relating to the occurrences alleged in the complaint and/or answer in this matter, including but not limited to, the complete investigative file(s), any and all statements, reports, photographs, investigative reports, court records, transcripts, testimony, orders, pleadings or any court papers, and/or opinions and statements of Defendants, Plaintiff, or any other witness or police officer regarding each occurrence alleged in the complaint.

**RESPONSE**: The City objects to this request: (1) as unduly burdensome to the extent it calls for documents not in the possession, custody, or control of the City; (2) as overbroad, vague and ambiguous as to "the occurrences alleged in the complaint" as there is only one explicitly defined occurrence—the August 2, 2013—referenced in the Complaint giving rise to the alleged constitutional violations, while the remaining "occurrences" referred to in the Complaint concern IPRA investigations relating to Log# 1063990 and other complaint registers filed against Defendant Officers over almost a 15 year period involving their interactions with citizens; therefore, the City objects to this request as not proportional to the needs and issues of the case, given that Plaintiffs' *Monell* claim focuses on the adequacy of these internal disciplinary investigations into allegations of misconduct, not the underlying incidents themselves or any criminal proceedings tied to them; and (3) as duplicative and unduly burdensome because

8

Plaintiffs are already in possession of all the Defendant Officers' Log/CR files. Subject to and without waiving these objections, the City agrees to produce Log Nos. 1070321 and 1063990 upon the entry of an appropriate protective order once those files are closed. The City further refers Plaintiffs to criminal court transcripts of *People v. Elaina Turner*, which are bates-stamped 588-798.

15.    The complete personnel files for each Defendant Officer and any other related documents, including but not limited to, records reflecting each of the Defendant's participation in or referral to the Department's Behavioral Alert, Behavioral Intervention, or Personnel Concerns programs, physical, psychological or evaluative tests for fitness for duty, performance evaluations and ratings, <u>awards or commendations,</u> <u>complaint and</u> <u>disciplinary records,</u> job assignments and details, and employment application.

**RESPONSE**: The City objects to this request on the following grounds: (1) irrelevant; (2) calls for documents protected against disclosure under the Illinois Personnel Record Review Act; (3) calls for documents protected against disclosure under the Illinois Physician/Patient Privilege, enumerated in 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure; and (4) calls for documents protected against disclosure under the federal psychotherapist-patient privilege, as announced in *Jaffee v. Redmond*, 518 U.S. 1 (1996. Personnel files maintained by the Chicago Police Department ("CPD") contain the employee's application for employment, financial information, insurance information, and other personal information such as home address and designation of beneficiary, and personnel files are protected from disclosure by the Illinois Personnel Record Review Act. Disclosure of such personal information would infringe upon the legitimate privacy and security interests of Defendants and their families. Further, courts have upheld the privacy interests of police officers in litigation and the right to protect their personal security and bodily integrity by limiting discovery requests and holding municipal employers liable for producing personnel files. See, e.g., <u>Kallstrom v. City of Columbus</u>, 136 F.3d 1055 (6th Cir. 1998). Disclosure of such personal information would infringe upon the law

9

enforcement officers and their families' legitimate privacy and security interests. Furthermore, the City renews the proportionality objections made in its Response to Plaintiff's Production Request No.2. Subject to and without waiving these objections, the City refers Plaintiffs to Defendant Officers' CRMS histories (FCRL 828-829), complimentary histories (825-827), and training histories (FCRL 893-921) to the extent these documents may be responsive to this request.

16. All physical evidence regarding the incidents alleged in the complaint, including, but not limited to all photographs, recordings (video and audio), transcripts, slides, movies, pictures, drawings, demonstrative aids or other depictions of:

a) the scene of any of the occurrences or incidents alleged in the complaint;
b) Plaintiffs physical conditions after the alleged incident and in the six months immediately prior and/or subsequent;
c) any injuries or other damages alleged by any party;
d) media or news reports regarding Plaintiff's arrest and injuries;
e) any video and/or statements made by Plaintiff or any other individuals relating in any way to the allegations in Plaintiff's complaint; and,
f) any other tangible objects relating to this case.

**RESPONSE**: The City objects to this request as unduly burdensome. "The incident alleged in the Complaint" could be construed as referring to the underlying police/civilians interactions of at least 29 complaint registers that were filed against Defendant Officers over a 15 year period. Moreover, this request seeks not only physical evidence but a number of other sub-categories of documents relating to these underlying police/civilians interactions. To obtain these documents would be unduly burdensome and disproportionate to the needs of the case in light of the subject matter of Plaintiffs' *Monell* claim, which focuses on the adequacy of the disciplinary investigations, not the underlying incidents themselves. Subject to and without waiving these objections, the City refers Plaintiffs to Inventory Sheets-HW390385 (FCRL 830-840) and will

assist Plaintiffs in arranging for a visual inspection of the inventoried items at CPD's Evidence and Recovered Property Section upon the entry of a court order.

17. All documents relating to any injuries and/or damages Defendants claim in this matter, as well as any documents relating to Plaintiff's damages, which may be in the control of Defendants.

**RESPONSE**: To the extent this request seeks documents relating to any medical and/or psychiatric records of the Defendant Officers, the City objects to this request as harassing, over broad, irrelevant and not proportional to the needs of the case and the subject matter of the lawsuit as Defendant Officers' physical and/or mental condition is not at issue in this case, nor are Defendant Officers claiming any physical or mental injuries resulted from the August 2, 2013 incident. Moreover, the Defendant Officers treatment history and/or drug and alcohol testing is neither material nor relevant to the Plaintiffs' *Monell* claim and, therefore, this request is overbroad, unduly burdensome and disproportionate to the issues in the case. Finally, the City objects to this request as calling for documents protected against disclosure under the Illinois Physician/Patient Privilege, enumerated in 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure and the federal psychotherapist-patient privilege, as announced in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Subject to and without waiving these objections, the City refers Plaintiffs to CFD Ambulance Run Sheets (FCRL 852-857), CFD Report-Elaina Turner (FCRL 821-824), and Plaintiff Turner's medical records obtained by IPRA from St. Bernard Hospital regarding her treatment on August 2, 2013 following the incident, as found in Log File # 1036690 and which is already in Plaintiffs' possession.

18. All documents relating to any expert witness who will be called to testify at trial including but not limited to, all reports or opinions prepared by such expert, a curriculum vitae for each and every such expert, copies of all articles, reports or professional papers published by each expert, copies of all communications to/from such experts regarding this matter, all documents reviewed and relied upon, transcripts of prior testimony by such expert and copies of any prior reports or opinions prepared by such expert for Defendant City.

11

**RESPONSE:** The City objects to this request as premature as discovery is still ongoing. Subject to and without waiving these objections, the City has not identified any experts at this time, but reserves the right to identify experts in the future and will make the appropriate disclosures at the time consistent with the applicable Rules of Civil Procedure.

19.     All medical and/or psychiatric records relating to Plaintiff and/or Defendants which are in Defendants' possession or have been, or will be obtained, by Defendants through third parties, which relate to present or past physical, medical, mental or psychological problems, diagnoses or condition(s) of the parties. This request includes, but is not limited to, hospital and doctors' records, all doctors' reports, including reports prepared by any psychiatrist, psychologist, counselor, mental, drug and alcohol-related, or other health care practitioner or facility, insurance claims made, public aid or disability benefits or income received or applied for (including SSI, Medicaid, other public aid, etc.), drug tests taken, drug or alcohol counseling requested or received, medicines or drugs prescribed (including the specific condition being treated), and all medical and mental health records regarding drug and alcohol-related history and treatment.

**RESPONSE:** To the extent this request seeks documents relating to any medical and/or psychiatric records of the Defendant Officers, the City objects to this request as harassing, over broad, irrelevant and not proportional to the needs of the case and the subject matter of the lawsuit as Defendant Officers' physical and/or mental condition is not at issue in this case, nor are Defendant Officers claiming any physical or mental injuries resulted from the August 2, 2013 incident. Moreover, the Defendant Officers treatment history and/or drug and alcohol testing is neither material nor relevant to the Plaintiffs' *Monell* claim and, therefore, this request is overbroad, unduly burdensome and disproportionate to the issues in the case. Finally, the City objects to this request as calling for documents protected against disclosure under the Illinois Physician/Patient Privilege, enumerated in 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure and the federal psychotherapist-patient privilege, as announced in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Subject to and without waiving these objections, the City refers Plaintiffs to CFD Ambulance Run Sheets (FCRL 852-857), CFD Report-Elaina Turner (FCRL 821-824), and

12

Plaintiff Turner's medical records obtained by IPRA from St. Bernard Hospital regarding her treatment on August 2, 2013 following the incident, as found in Log File # 1036690 and which is already in Plaintiffs' possession.

20.     Any and all reports or documents which support or relate to any of your responses to Plaintiff's Interrogatories and/or Requests to Admit in this case.

**RESPONSE**: The City objects to this request as premature as Plaintiffs have not propounded any Requests to Admit on the City.  Subject to and without waiving these objections, the City refers Plaintiffs to Bates-stamped documents FCRL 1-23, 36-40, 54-55, 66-67, 105-106, 822-824, 841-851, and the contents of Log File No. 1063990.

21.     All documents relating to the training policies of the City of Chicago in regards to Chicago Police Officers certification to use a Taser, including but not limited police academy curriculum (i.e. required classes, test scores, and hours of classwork and training, if applicable) and mandatory continuing education or training requirements of Chicago Police Officers.

**RESPONSE**: The City objects to this request as irrelevant to any of the claims raised in this case, overbroad as to time frame and scope, and not proportional to the issues in the case given that Plaintiffs' are not bringing a "failure-to-train" on the use of force or, specifically, the use of Tasers under a *Monell* theory of liability, nor are they premising their willful and wanton supervision claim on any allegations that the City's training program on the use and certification of Tasers is deficient or that the City somehow improperly trained Officer Kelly on using a Taser or that Officer Kelly lacked certification to use a Taser. Subject to and without waiving these objections, the City refers Plaintiffs to Officer Kelly's training history (FCRL 893-899), and CPD Directive U04-02-04, which is available for download free of charge at http://directives.chicagopolice.org/directives.

22.     All documents related to City of Chicago policies relating to investing complaints made against Chicago Police Officers alleging excessive force by Taser, false arrest, or any constitution violations.

13

**RESPONSE**: The City objects to this request as vague as to the phrases "related to" and "relating to," overbroad as to time frame and scope, duplicative, unduly burdensome given the lack of any defined period of time, and not proportional to the issues in the case as this request seeks all documents related to City policies relating to investigating complaints alleging "any constitutional violation" where the specific constitutional violations claimed in this case are excessive force and false arrest. Subject to and without waiving these objections, the City refers Plaintiffs to the Bureau of Internal Affairs website that outlines the Investigative and Complaint Processes for those categories of complaints handled by CPD's Internal Affairs Division, which is available at https://portal.chicagopolice.org/portal/page/portal/ClearPath/Internal%20Affairs%20Division, General Orders G08-01, G08-01-01, G08-01-02, and Special Orders S08-01, S08-01-01-05, S08-01-08, which are available for download free of charge at http://directives.chicagopolice.org/directives/. Responding further, the City refers Plaintiffs to its Response to Plaintiffs' Production Request No. 8.

23.     All documents relating to any conviction, arrest, traffic stop, detention, field interview, or commitment of either Defendant Officers and/or Plaintiff by any individual, governmental entity, juvenile authority or law enforcement agency including but not limited to the Defendants, Chicago Police Department, Cook County, the State of Illinois, U.S. Marshall's Service and the Federal Bureau of Investigation (F.B.I.).

**RESPONSE**: The City objects to this request to the extent it calls for law enforcement records not in the custody, possession, or control of the City, to the extent it seeks confidential juvenile law enforcement records of Plaintiffs (if any) that are protected against disclosure and would require a court order to release such records, unduly burdensome, not proportional and overbroad in seeking juvenile arrest records of Plaintiffs given the procedure necessary to obtain such records, overbroad as to time frame and scope, vague as to "documents relating to," harassing, irrelevant and disproportionate to the issues of the case to the extent this request seeks law

14

enforcement records relating to Defendant Officers, and to the extent it seeks law enforcement records relating to Officer Kelly's June 2006 (FCRL 574-587) and January 2010 (part of Log No. 1033096) arrests that have been expunged and, therefore, protected against disclosure in the absence of a court order.  Subject to and without waiving these objections, the City refers Plaintiffs to the police reports associated with the August 2, 2013 incident alleged in Plaintiffs' Amended Complaint (FCRL 1-106, 842-852), Arrest Report Search-Turner (FCRL 858), On-View Arrest-Green (FCRL 68-72), CLEAR Contact Info Card (FCRL 859-883), CLEAR ISP Negative (FCRL 883-884), Contact Card Search-Green (FCRL 886-892), CLEAR Stop Order (FCRL 885), Arrest History-Turner (FCRL 48-52), Arrest History-Green (FCRL 43-47), and Bates-stamped documents FCRL 1-67, 73-106.

24.     All documents, excluding attorney notes, relating to any civil action filed by or against the Defendant Officers in the past 10 years, including, but not limited to, copies of depositions any party has given (retained by Defendant City in either a paper or electronic format, affidavits you have signed under oath, and/or any written discovery certified by any party.

**RESPONSE**: The City objects to this request on the following grounds: (1) harassing; (2) unduly burdensome; (3) lacking proper foundation; (4) overbroad; (5) disproportionate to the needs of the case; (6) calling for public records and/or documents equally available to Plaintiff; (7) vague as to the phrase "relating to" and (8) irrelevant.

25.     All documents indicating the identity, address, and telephone number of any witnesses to any portion of the alleged incidents or alleged damages in this matter.

**RESPONSE**: The City objects to this request to the extent it seeks disclosure of personal identifying information of both defendant and non-defendant Chicago Police Officers. Disclosure of such personal information would infringe upon the legitimate privacy and security interests of those officers and their families.  Responding further, the City objects to this request to the extent it calls for information equally available to Plaintiff or seeks documents already in

15

Plaintiffs' possession. Finally, the City objects to this request to the extent it seeks information or documents relating to witnesses who have knowledge of the Plaintiffs' "alleged damages." Plaintiffs' are the only ones with direct knowledge of their alleged damages and are, therefore, the only parties in a position to truly ascertain that information. Consequently, the City objects to this request as calling for documents or information outside of its custody, possession, or control. Subject to and without waiving these objections, the City refers Plaintiffs to Defendants' Joint 26(a) Disclosure Statement, the contents of Log No. 1063390 already in Plaintiffs' possession (FCRL 208-572), CFD Report (FCRL 821-824), CFD Run Sheets (FCRL 852-857), and the medical records Plaintiff has already obtained from St. Bernard and University of Chicago.

26.     All documents relating to Plaintiff himself or the incident(s) for which Plaintiff was seized or arrested, including documents relating to any other crimes in which Plaintiff was suspected of involvement.

**RESPONSE**: The City objects to this request as lacking foundation to the extent it seeks "documents concerning the involvement or suspicion of other persons suspected of any type of involvement in the crime for which Plaintiff was arrested" as the City is not aware of any such person(s). Responding further, the City objects to this request on the following grounds (1) as duplicative; (2) as calling for documents already in Plaintiffs' possession; (3) vague and overbroad; and (4) calling for documents not in the City's possession, custody, or control. Subject to and without waiving these objections, the City refers Plaintiffs' to the documents referenced in the City's Response to Plaintiffs' Production Request No. 23.

27.     All documents relating to the crime for which Plaintiffs was arrested, including documents concerning the involvement or suspicion of other persons suspected of any type of involvement in the crime for which Plaintiff was arrested.

**RESPONSE**: The City objects to this request as lacking foundation to the extent it seeks "documents concerning the involvement or suspicion of other persons suspected of any type of

16

involvement in the crime for which Plaintiff was arrested" as the City is not aware of any such person(s). Responding further, the City objects to this request on the following grounds (1) as duplicative; (2) as calling for documents already in Plaintiffs' possession; (3) vague and overbroad; and (4) calling for documents not in the City's possession, custody, or control. Subject to and without waiving these objections, the City refers Plaintiffs' to the City's response to Plaintiffs' Production Request No. 23.

28.    All documents relating to communications or contacts between any party (Plaintiff or Defendants) and any other person(s) relating to the subject matter of the complaint (including any documents or tangible items shown to any such person). This request includes, but is not limited to, any documents relating to any communication between the parties to this lawsuit themselves; and/or between any party and another law enforcement agency; and/or between any party and any employee of the State's Attorney's Office.

**RESPONSE**: The City objects to this request on the following grounds: (1) to the extent this request specifically seeks documents relating to communications between City attorney(s) and other City personnel concerning this litigation as calling for documents protected against disclosure under the attorney-client privilege and/or attorney work-product doctrine; (2) calling for irrelevant documents as this request, based on how it's worded, could encompass email communications between Defense Counsel and Plaintiffs' Counsel regarding non-legal issues such as scheduling or a variety of other topics having no bearing on the substantive legal issues in the case and which are equally available to Plaintiffs' Counsel; and (3) calling for documents already in Plaintiffs' possession. Subject to and without waiving these objections, the City refers Plaintiffs to the contents of Log File No. 1063990 already in their possession (FCRL 208-572), Court File (FCRL 107-207), Criminal Court Transcripts (FCRL 588-798), CFD Report (FCRL 821-824), Original Case Incident Report (FCRL 841-851), IPRA Subpoena's (FCRL 922-928), and documents Bates-stamped FCRL 1-106 to the extent these documents may be responsive to

this request. The City has requested the administrative file relating to Docket No. 13VP012192

and will produce these materials upon receipt

29.    All documents of statements relating to communication your attorneys, agents, or anyone acting on your behalf, have had with any person regarding the subject matter of this lawsuit or its parties (including any documents or tangible items shown to any such person). This request includes, but is not limited to, any documents relating to any communications with any employee of the State's Attorney's Office or City of Chicago Law Department employees in relation to Docket No. 13VP012192.

**RESPONSE**: The City objects to this request on the following grounds: (1) to the extent this

request s specifically seeks documents relating to communications between City attorney(s) and

other City personnel concerning this litigation as calling for documents protected against

disclosure under the attorney-client privilege and/or attorney work-product doctrine; (2) calling

irrelevant documents as this request, based on how it's worded, could encompass email

communications between Defense Counsel and Plaintiff's Counsel regarding non-legal issues

such as scheduling matters or a variety of other topics having no bearing on the substantive legal

issues in the case; (3) calling for documents already in Plaintiffs' possession.  Subject to and

without waiving these objections, the City refers Plaintiffs to the contents of Log File No.

1063990 already in their possession (FCRL 208-572), Court File (FCRL 107-207), Criminal

Court Transcripts (FCRL 588-798), CFD Report (FCRL 821-824), Original Case Incident Report

(FCRL 841-851), and documents Bates-stamped FCRL 1-106 to the extent these documents may

be responsive to this request. The City has requested the administrative file relating to Docket

No. 13VP012192 and will produce these materials upon receipt.

30.    The complete criminal files for all criminal matters relating to this case, excluding privileged documents.

**RESPONSE**: The City objects to this request to the extent it seeks documents outside of its

possession, custody, or control and calling for documents equally available to Plaintiffs.  Subject

to and without waiving these objections, the City refers Plaintiffs to Court File (FCRL 107-207), IPRA Subpoena's (FCRL 922-928).

     31.    Any documents relating to communications by Defendants, or Defendants' attorney or agent, or anyone acting on Defendants' behalf, in the criminal case(s) and this litigation, with persons who are employed by or have worked for or been affiliated with the Chicago Police Department, Office of Professional Standards, Internal Affairs Division, Independent Police Review Authority, or any other City Department.

**RESPONSE**: The City objects to this request on the following grounds: (1) to the extent this request specifically seeks documents relating to communications between Defendant Officers' attorney(s) and other City personnel concerning this litigation, it should be directed to the Defendant Officers; moreover, such a request potentially calls for documents protected against disclosure under the attorney-client privilege and/or attorney work-product doctrine; (2) vague as to the phrase "criminal case" as it is unclear what criminal case or whose this request is referring to; (3) as irrelevant to the extent it seeks communications concerning Plaintiffs' criminal case and calling for documents not in the City's possession, custody, or control; and (4) to the extent this request specifically seeks documents relating to communications between City attorney(s) and other City personnel concerning this litigation as calling for documents protected against disclosure under the attorney-client privilege and/or attorney work-product doctrine.

     32.    Any and all documents relating to the education and training the Defendant Officers completed as required or recommended by the City of Chicago or Chicago Police Department including any grades or test scores received.

**RESPONSE**: The City objects to this request: (1) as overbroad and disproportionate to the needs of the case in light of the particular claims being brought by Plaintiff and against the City as this request seeks all document relating to _any training_ the Defendant Officers completed while Plaintiffs' _Monell_ claim focuses on inadequate disciplinary investigations and their pendent willful/wanton supervision state law claim focuses solely on Officer Kelly's training in

19

the use of Tasers; (2) overbroad, irrelevant, harassing, and disproportionate to the needs of the case in that it seeks "all documents relating to" Defendant Officers' education; and (3) to the extent it seeks transcripts, grades, test scores or other documentation relating to Defendant Officers' undergraduate education that might be contained in Defendant Officers' respective personnel files as protected against disclosure under the Illinois Personnel Record Review Act. Subject to and without waiving these objections, the City refers Plaintiffs to Defendant Officers' training histories, bates-stamped FCRL 893-921.

33.    All documents relating to every complaint in the past ten (10) years of alleged misconduct by each Defendant Officer regardless of whether discipline was imposed or a sustained finding was issued or if the complaint is still pending. This request includes, but is not limited to, complaint histories and prior complaint register ("CR") files.

**RESPONSE**: The City objects to this request as vague as to the phrase "all documents relating to every complaint . . ." and as overbroad and unduly burdensome because "all documents relating to every complaint" could potentially encompass a myriad of documents outside of the normal documentation contained in a CR/Log File held by a variety of agencies, resulting in substantial costs and an unreasonable expenditure of effort to the responding party.  Responding further, the City objects to this request as duplicative and to the extent it seeks documents, specifically CR/Log Files of the Defendant Officers, already in Plaintiff's possession.  Finally, the City objects to this request to the extent it seeks CR/Log files (and any documents/attachments) that remain pending or could be considered "open" investigations as the investigating agency will not provide that documentation under those circumstances and pursuant to the investigatory privilege (*e.g.,* Log No. 1073630 and 1063990). Subject to and without waiving these objections, the City refers Plaintiffs to the Defendant Officers' CR/Log Files produced to them in *People v. Turner* by IPRA and already in Plaintiffs' possession (IPRA

1-2957) along with the contents of two additional CD's produced by Plaintiffs in their initial

disclosures.

34.    In the event that you withhold any document covered by these requests, you shall prepare a list to be provided to the Defendant identifying each such document together with the following information:

    a)    The paragraph of this request to which the document relates. In the case of any document relating in any way to a meeting or any other conversation, all participants in the meeting or conversation are to be identified.

    b)    The date of the document;

    c)    A brief description of the subject matter of the document;

    d)    The name of each author or preparer and an identification of each such person;

    e)    The name of each person who was sent or furnished with the document, received, viewed or has had custody of the document, together with an identification of each and every such person;

    f)    The reason for withholding; and,

    g)    A statement of facts constituting the basis for any claim of privilege, work product, or other ground of non-disclosure.

**RESPONSE**: The City refers Plaintiffs to: (1) FCRL 574-587, which refers to Officer Kelly's

June 2006 arrest and consists of CPD Case Report, Inventory Sheets, Original Case Incident

report, Supplementary Report, and photos under RD# HM4088449. These materials are being

withheld because they have now been expunged and require a court order for disclosure; (2)

FCRL 573 consists of an internal communication dated September 21, 2015 between

Corporation Counsel and IPRA relative to Log File No. 1070321 and is being withheld on the

basis of attorney work-product and the investigatory privilege; (3) the contents of Log File No.

1070321, which refers to an open IPRA investigation involving an interaction between Officer

Kelly and a civilian that occurred on October 8, 2014.  These materials are being withheld

pursuant to the law enforcement investigatory privilege; (4) email communications dated

October 19, 2015 between Defense Counsel and attorney Molly Thompson regarding Plaintiffs'

Counsel's subpoena's issued in *People v. Turner*, which are being withheld on the basis of the attorney-work product doctrine. Please note that Log File No. 1063990 (FCRL 208-573) has been bates-stamped and referred to in the City's responses for future ease in producing the file once it has been closed and the appropriate protective order entered.

Respectfully submitted,

*/s/ Marshall Keith Martin*
MARSHALL KEITH MARTIN
Assistant Corporation Counsel

City of Chicago Department of Law
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 742-0305 (P)
(312) 744-6566 (F)

## CERTIFICATE OF SERVICE

I hereby certify that I have served this notice and the attached document **Defendant City's Responses to Plaintiffs' Request for Production of Documents** by causing it to be delivered by [ ] hand delivery [ X ] U.S. Mail Postage Prepaid [ ] Court's electronic filing system to the following: LAW OFFICE OF JEFFREY B. GRANICH, Attn: Jeffrey B. Granich, 53 W. Jackson, Suite 1028, Chicago, IL 60604, on this 8th day of April 2016.


*/s/ Marshall Keith Martin*
MARSHALL KEITH MARTIN
Assistant Corporation Counsel

23